UNITED STATES FIDELITY & GUARANTY COMPANY *v.* PEOPLE'S BANK.

*(Jackson.    April, Term, 1913.)*

1. **BANKS AND BANKING.** Bank knowingly permitting the deposit of guardian funds to the personal account of the guardian is, jointly with him, guilty of a conversion and liable therefor.

Where a guardian, holding a check representing guardianship funds, but payable to himself individually, deposited it to his personal credit in a bank, whose assistant cashier had knowledge of the facts and permitted such deposit, and the guardian thereafter used, for his personal benefit, the funds represented by the credit, and then absconded, the guardian and the bank were both guilty of a conversion of the fund, completed by the entry of the check to the guardian's personal credit, whereby the misuse of the funds by the guardian was thus made easy and expeditious, through checks drawn and signed with his personal name; and the bank thus became a trustee of the fund, and could only be relieved from liability to account therefor by the guardian's subsequent true administration of the guardianship estate and his accounting therefor, though the guardian promised the bank, at the time of the entry of the deposit, that he would faithfully administer the fund and keep a true account thereof on his own private books; for the bank took this risk, and could not lawfully impose such risk on the wards, and it was the folly of the bank to trust the guardian's such promise. (*Post, pp. 722-725.*)

Cases cited and approved: Draper v. Joiner, 9 Humph., 612, 615; Clark v. State, 7 Cold., 306, 322; Sanders v. Forgasson, 3 Bax., 255; Brocchus v. Morgan, 3 Shannon's Cases, 667; Covington v. Anderson, 16 Lea, 310; Caulkins v. Gaslight Co., 85 Tenn., 683; Bank v. Looney, 99 Tenn., 293; Duckett v. Bank, 86 Md., 400.

Fidelity & Guaranty Co. v. Bank.

2. **SAME. Same. Guardian's surety, having paid amount of such conversion, is entitled to be subrogated to rights of wards against such bank.**

Where a guardian deposited guardianship funds to his personal credit in a bank, in which conversion the bank knowingly participated, it became personally liable for the fund as cotrustee with the guardian, and owed the money to the wards as much as the guardian owed it, and where the guardian thereafter used the funds so deposited for his personal benefit, and then absconded, his surety, paying the wards, was entitled to be subrogated to the rights of the wards against the bank, and to recover from it the total deposit, and not merely a small overdraft at the time of the making of the deposit. (*Post, pp.* 725, 726.)

Cases cited and approved: Smith v. Alexander, 4 Sneed, 482, 487-489; Bittick v. Wilkins, 7 Heisk., 307; Holt v. Strain, 2 Shannon's Cases, 166; Fidelity & Guaranty Co. v. Adoue, 137 S. W. (Tex.), 648, 37 L. R. A. (N. S.), 418; Bank v. Fidelity & Deposit Co., 129 Ga., 126; Fox v. Alexander, 36 N. C., 340; Rhame v. Lewis, 13 Rich. Eq. (S. C.), 269.

---

## FROM WEAKLEY.

---

Appeal from the Chancery Court of Weakley County to the Court of Civil Appeals, and by writ of *certiorari* from the Court of Civil Appeals to the Supreme Court. —C. P. McKINNEY, Chancellor.

BIGGS & SPRAGINS, for complainant.

LEWIS & GARRETT, for defendant.

127 Tenn.—46.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

H. L. Turner presented to the defendant bank for deposit the following check:

"The Weakley County Bank.

"Dresden, Tenn., April 5, 1910.

"Pay to the order of H. L. Turner $516.24, five hundred sixteen and 24/100 dollars, Turner Fryer and Gladys Fryer. Amt. in full in the cause. *Ward et al.* v. *Fannie Turner et al.*

"[Signed]  C. H. Hilliard, Clerk."

Mr. Fonville, the assistant cashier, asked him to indorse it. Thereupon he wrote on the back of the check: "H. L. Turner, Guardian." It thus being brought to the attention of the assistant cashier that the check represented guardian funds, Turner being guardian for the two children mentioned in the face of the check, he was asked if he wished to have the check entered on a separate account, meaning an account as guardian. Turner said, "No," he wished it entered on his personal account, and that he would expend the money solely for the benefit of his wards, and would keep an accurate account on his private books; that it would be more convenient for him to have but the one account. With this explanation, and relying on the promise of Turner to properly expend the fund, the assistant cashier gave him credit for the check on his personal account. This account was at that time overdrawn to the amount of $30.40. Turner was then a man of high stand-

ng in Weakley county, but subsequently, after squandering all of the funds represented by this credit on his own personal account, he absconded, and the complainant, as surety on his bond, was compelled to pay the amount of the estate that came to his hands, which was a few dollars more than the fund represented by the check. After the money was credited in the manner stated, Turner drew sundry small checks on the account, the checks being signed by him personally, and by these checks the fund was exhausted. Fifteen of the checks were in sums less than five dollars. There was one check for $100 in favor of the Farmers' Bank, another for fifty dollars in favor of the same bank, a check for fifty dollars in favor of the City National Bank, a check for $130 in favor of Charles Brand, one for seventy dollars in favor of W. W. Morse, one for thirty-five dollars in favor of Walter Rawls, and others for various amounts to different parties. As the result of this method of expenditure the whole fund was wasted between April 5th and May 12th, leaving an overdraft of $62.38.

Upon payment of the sum found due, the complainant filed its bill to hold the bank liable for the amount of the check. The chancellor and the court of civil appeals concurred in rendering a decree against the bank. Thereupon the case was brought to this court by the writ of *certiorari*, and has been argued at the bar.

The entry of the check to the personal credit of the guardian by the bank was a conversion of the fund by both. Upon the making of such entry the bank became trustee of the fund, and became liable therefor, and

could be saved 1 " being compelled to account to the wards therefor only upon the guardian's subsequent true administration thereof and accounting therefor. *Draper* v. *Joiner,* 9 Humph., 612, 615, 49 Am. Dec., 719; *Covington* v. *Anderson,* 16 Lea, 310; *Caulkins* v. *Gas Light Co.,* 85 Tenn., 683, 4 S. W., 287, 4 Am. St. Rep., 786; *Clark* v. *State and Bank of Tennessee,* 7 Cold., 306, 322; *Brocchus* v. *Morgan,* 3 Shan., 667; *Sanders, Trustee,* v. *J. H. Forgasson,* 3 Baxt., 255; *Bank* v. *Looney.* 99 Tenn., 293, 42 S. W., 149, 38 L. R. A., 837, 63 Am. St. Rep., 830; *Duckett* v. *National Mechanics' Bank,* 86 Md., 400, 38 Atl., 983, 39 L. R. A., 89, 63 Am. St. Rep., 513; Zane on Banks & Banking, 136, pages 218, 219; Id., sec. 341, pages 602 and 603.

The fact that Turner promised the bank that he would faithfully administer the fund, and would keep a true account thereof on his own private books, cannot be held to excuse the original conversion that made the misuse of the funds by the guardian easy and expeditious through checks drawn and signed with his personal name. Under the facts stated the bank took the risk of the guardian's making a proper disposition of the fund and keeping a true account thereof. This could not lawfully be imposed on the shoulders of his wards. The reliance of the bank upon the guardian's *promises.* under such circumstances, was simply folly.

We do not wish to be understood as holding that a bank is in general liable for the acts of trustees who deposit money with them. If the money is deposited to the trustee's credit as such, and his checks are drawn

on this fund in his character of trustee, or guardian, as the case may be, the bank need look no further. It is not responsible for his administration of the fund, unless it knows, or in some special transaction has good reason to believe, that he is misappropriating the fund. It would be out of all reason to impose such responsibility on banks. The special case we have before us, and to which we confine this opinion, is one wherein the bank knowingly united with the guardian or trustee in a misappropriation of the fund, by crediting it to the individual account of such trustee or guardian.

So far all the members of the court concur. The majority of the court are likewise of the opinion that the surety, on payment of the debt, was entitled to be subrogated to the rights of the creditors—that is, of the wards—against the bank. These wards had the right to sue the bank for the conversion of the fund. The surety, on payment to the wards, in equity acquired their right of action against the bank. We think this result falls within the principles recognized in *Bittick* v. *Wilkins*, 7 Heisk., 307, *Holt* v. *Strain*, 2 Shan. Cas., 166, and *Smith* v. *Alexander*, 4 Sneed, 482, 487-489. These principles seem to us sound and just, and based on a strong equity. And see, to the same effect, *United States Fidelity & Guaranty Co.* v. *Adoue* (Tex.), 137 S. W., 648, 37 L. R. A. (N. S.), 418; *American National Bank* v. *Fidelity & Deposit Co.*, 129 Ga., 126, 58 S. E., 867, 12 Ann. Cas., 666; *Fox* v. *Alexander*, 36 N. C., 340; *Rhame* v. *Lewis*, 13 Rich Eq. (S. C.), 269.

It is insisted that the bank, having obtained no further benefit than the satisfaction of the $30.40 overdraft existing at the time, should not be subjected to any further burden; that the surety was paid to take the risk, and, having taken it, should not seek to be relieved therefrom by throwing the burden on the bank. The majority are of the opinion that this objection is met by the fact that, when the bank knowingly participated in the conversion, it became personally liable for the fund as cotrustee with the guardian, and that in this situation it owed the money to the wards as much as the guardian owed it, and that the surety was entitled to be subrogated to the rights of action which the creditors whom he paid held against one primarily liable. The liability of a cotrustee, who becomes such *ex maleficio,* by reason of his wrongful dealing with the fund, whereby it is lost, is a liability prior to that of a surety for the original trustee, who has been compelled to pay the debt.

It results that there was no error in the judgment of the court of civil appeals, and it is affirmed.

MR. JUSTICE WILLIAMS delivered a dissenting opinion as follows:

Finding myself unable to agree with the majority in the opinion delivered by the chief justice, I briefly announce the reasons for dissent.

The result reached comes nearer to being logical than equitable. It is conceived that, on analysis, it is neither.

The Guaranty Company seeks to have enforced in its behalf the remedy of subrogation—a remedy invented

by courts of equity to compel the ultimate discharge of an obligation by him who in good conscience ought to satisfy it. The court will move to administer it only when the facts of the particular case impel it so to do.

The majority opinion, as it must, on this record, treats the entry of the check of $516.24 to the personal credit of Turner as the test act of conversion. It should be noted that the bank learned that the check represented a guardian fund only from what Turner told the assistant cashier; but with this came also the assurance that Turner would expend the proceeds solely for the benefit of his wards, and would truly account.

The Guaranty Company is in the attitude of saying to the bank: "You should not have believed Turner in the one aspect, but must be held to have believed him in the other."

It would seem to be a sufficient answer on the part of the bank: "If we trusted Turner, you had precedently stood sponsor for his official conduct and integrity, and, for a consideration, had said that he was to be trusted; that he would not do other than he assured us he would—duly account. We saw you, in legal contemplation, standing by Turner's side, saying what he said by way of assurance. We trusted, not merely Turner, but Turner as bonded by you."

To the extent that the bank profited by or was the beneficiary of the conversion, it should be held. But further than that, where the test of liability to be applied is, "Who in good conscience ought to stand the loss?" I think equity should not convict the bank for

trusting Turner to the extent it did; at the instance and for the relief of his official sponsor; otherwise, equity would impose upon the bank a suretyship for Turner and its liability fixed as primary, whereas, one would suppose that the Guaranty Company had that *status* and risk.

MR. JUSTICE BUCHANAN also dissents.