ED. DOBBINS *et al. v.* J. F. CARROLL *et al.**

*(Nashville.   December Term, 1916.)*

**1. BILLS AND NOTES. Statutes. Implied repeal.**

Acts 1899, chapter 94, section 1 (4), providing that the instrument, to be negotiable, must be payable to order or bearer, impliedly repeals Shannon's Code, section 3506, to the contrary. (*Post, p.* 137.)

Acts cited and construed: Acts 1899, ch. 94, sec. 1.

Case cited and approved: Gilley v. Harrell, 118 Tenn., 115.

Code cited and construed: Sec. 3506 (S.).

**2. DEPOSITS IN COURT. Purchase-money notes on judicial sale. Assignment by clerk.**

A nonnegotiable note for purchase money of land sold under decree of chancery court and payable to the clerk thereof is not assignable by him, such note being in custody of the law and not subject to delivery. (*Post, pp.* 137, 138.)

**3. DEPOSITS IN COURT. Note in chancery court. Conversion.**

Where a clerk of the chancery court, holding a note for purchase money of land sold under decree of court, payable to himself, and showing on the face thereof that it was part of the court record, assigns it to the cashier of a bank which collects it, the bank is an accessory to the diversion and loss of the fund and liable for the full amount thereof. (*Post, pp.* 138, 139.)

Case cited and distinguished: Bunting v. Ricks, 2 Dev. & B. (22 N. C.), 130.

Code cited and construed: 1092 (S.).

---

*On right of sureties of public officer, who have made good loss occasioned by their principal's default or misconduct to be subrogated to the rights of the obligee or beneficiary of the bond against a third person, see notes in 14 L. R. A. (N. S.), 155; 46 L. R. A. (N. S.), 557.

4. SUBROGATION.    Official Bond.    Surety.

Where the clerk of the chancery court, who assigns to the bank
a note for purchase money of land sold under decree of court,
and the bank, are liable to the beneficiaries of the fund repre-
sented by the note sureties on official bond of clerk having paid
beneficiaries may be subrogated to their rights against the bank,
and Shannon's Code, section 1092 (3), providing that bond in
such cases is for benefit of every person who is injured, does
not release the bank. (*Post,* pp. 139-141.)

Cases cited and approved: U. S. Fidelity, etc., Co. v. Bank, 127
Tenn., 720; Oglesby v. Foley, 153 Ill., 19.

Case cited and distinguished: Bunting v. Ricks, 2 Dev. & B. (22
N. C.), 130.
Code cited and construed: 1092 (S).

FROM LEWIS.

Appeal from the Chancery Court of Lewis County
to the Court of Civil Appeals, and by *certiorari* to
the Court of Civil Appeals from the Supreme Court.
—Douglas Wilke, Chancellor.

Webster & Webster and W. S. Fleming, for Dobbins.

R. L. Leech and Edward B. Henslee, for appellee.

Mr. Justice Williams delivered the opinion of the
Court.

This suit was brought by certain sureties on the
official bond of Carroll, executed by him as clerk and
master of the chancery court of Lewis county, at
Hohenwald, to recover from the Phœnix National

Bank, of Columbia, the amount of a note that had been executed to Carroll, clerk and master, to represent the last installment of the deferred purchase money for land, a sale of which had been made by that official under a decretal order of the chancery court in the case of *Brown* v. *Robinett.*

It appears that the earlier installment notes had been paid by their makers, but the clerk and master was behind in the payment of the proceeds to the beneficiaries of the fund, and these persons were pressing him for payment.

About a month before the last note matured, Carroll took it to Columbia, in the adjoining county of Maury, to make a disposition of it. He was introduced to Mr. Fulton, the cashier of the Phœnix National Bank, by a reputable member of the Columbia bar, and he proposed a discount of the note to the bank, explaining that the bank at Hohenwald was a small one and not at the time in condition to discount paper. He further stated that the court had ordered a settlement of the estate to which this note belonged, that the parties who were to receive the proceeds had requested him to discount the note, and that they would stand the discount. He further assured Fulton "that everything was regular as to the court."

In fact, no such request had been made by the beneficiaries of the fund, and the court had made no order authorizing or directing any transfer or disposition of the note or for any settlement other than one in ordinary course.

The cashier discounted the note, not knowing of Carroll's real purpose; and as the latter returned to Hohenwald he stopped and paid a part of the proceeds of the note to some of the beneficiaries, evidently with a view to quieting them. The balance was misappropriated by him. Later he became a defaulter.

The sureties on Carroll's bond were adjudged liable to his successor in office for the use of those interested in the fund; and each of the sureties has paid his *pro rata* of the liability sum, save one.

The bill of complaint prays that the sureties be subrogated to the rights of the beneficiaries and be allowed to recover of the bank, which was paid the amount due on the note by its makers who had purchased the land at the clerk and master's sale.

The note was in the form customarily in use in chancery proceedings, as follows:

"Twelve months after date we promise to pay J. F. Carroll, clerk and master, twelve hundred and forty-six and 88/100 dollars ($1246.88), second deferred payment on the Jones Land, sold by decree of the chancery court of Lewis county, Tenn., with interest from date. This July 5th, 1914.

G. W. STALEY,
WILL. ROBINETT."

On the back of the note appears this transfer:

"For value received I hereby transfer the within note, with all its liens and equities, to H. O. Fulton, cashier. June 3, 1914.

J. F. CARROLL, C. & M."

The chancellor decreed in favor of the sureties, but his decree on appeal to the court of civil appeals was reversed.

Formerly under the law merchant, and now under the Negotiable Instruments Law, a note in order to be negotiable must be payable to order or bearer. The code provision to the contrary (Shannon section 3506) was impliedly repealed by the uniform act. *Gilley* v. *Harrell,* 118 Tenn., 115, 101 S. W. 424. The note set out above is not so payable, and it cannot be considered negotiable. Acts 1899, chapter 94, section 1 (4).

Ordinarily, a nonnegotiable note is assignable, but the instrument here involved was not one that was capable of being assigned by any act of him who is named as payee. The instrument was in the custody of the law as a part of the court file in the case of *Brown* v. *Robinett,* pending in the chancery court, and as such was not the subject-matter of a delivery which is an element of an assignment or transfer of such an instrument.

If such note be assignable at all, it must be by reason of some order of the court directing its delivery from the court's files thus terminating its own custody, and authorizing a disposition.

It has never been considered in this State that a note executed to a clerk and master is subject to be assigned, and we think a chancellor would be loath, to say the least, to pass an order for the assignment or discount of notes executed for the purchase money

of lands sold under his decrees, thus making the registry of his court a broker's office, and leading to complications, temptations, and abuses. Such notes have peculiar qualities, in that the makers and sureties signing them become *quasi* parties to the cause, subject to the adverse and protective decrees of the court.

The note in this case on its face carried notice and warning that it was a part of the record of the chancery court of Lewis county, and of its trust character. When, therefore, it was purchased by the cashier, the bank aided in a diversion, and could have been held to respond directly, in order to the protection of the beneficiaries of the purchase-money funds represented by the note, in a suit against the bank for their benefit.

In *Bunting* v. *Ricks*, 2 Dev. & B. (22 N. C.), 130, 32 Am. Dec., 699, it was held that a breach of trust occasioned by the misapplication by the clerk of a court of a note held by him in trust is sufficient to charge one (Ricks) who took it, even though in ignorance of the character in which it was held by the officer, but who was cognizant that it had been given to a court commissioner in payment, at a sale made under his direction, in obedience to a decree of court. The note indorsed by the commissioner to the clerk did not on its face, as here, disclose its trust character. Chief Justice RUFFIN said:

"This defendant is obliged to admit that he was aware of that character (of the official who delivered

the note to him) and of the interest in the sale of the parties to the suit by petition. Then Melton's indorsement could satisfy Ricks of nothing in respect of his authority from the court or those' parties, to change the security for the debt by giving to Whitfield this note for his own. . . . One who knew that, in its inception, the note belonged beneficially to the parties to the suit, could not justifiably rely on any indorsement, even of him to whom the note was payable, without first ascertaining that those beneficial owners had parted from their interest, or that they or the court had given authority to the person thus disposing of what—at least at one time—was not in fact his, although it so appeared to be.''

For stronger reasons the bank in the pending case must be held to be liable as an accessory to the diversion and loss of the trust fund, since the bank knew that the note was payable to Carroll in his official capacity.

It is urged, however, in defense of the bank that, even if this were true were the beneficiaries of the trust fund suing it, the sureties of the malfeasant officer are not entitled to the equitable remedy of subrogation, since they stood as sponsors for the right conduct and faithfulness of the clerk and master. A like contention was made in the case of *U. S. Fidelity, etc., Co.* v. *Bank,* 127 Tenn., 720, 157 S. W., 414, but denied.

It is insisted that the case just cited and this case may be differentiated, on the ground that the stat-

ute, governing the obligatory force of the bond (and therefore the rights of sureties) of a clerk and master, sets out that the bond in such case is for the benefit of "every person who is injured, as well by any wrongful act committed under color of his office as by his failure to perform, . . . the duties imposed by law." 1 Shan. Ann. Code, section 1092 (3). The argument is that the bank was injured by a wrongful act committed by Carroll under color of his office, and that the sureties in a court of equity ought not to be allowed subrogation in order to recover of it.

If the case of *U. S. Fidelity, etc., Co.* v. *Bank, supra,* did not reach to this direct point, the North Carolina case, above referred to, did. The argument was there held to be not well based, the court writing:

"But it is said the equity of the plaintiffs is repelled by the nature of their obligation, as they contracted to be responsible for the frauds and other malfeasances of the clerk, as well as for his nonfeasances. Admit it; but to whom are they to be responsible? To those who can complain of a violation of official duty, as an injury to them; but not to one who culpably aided or concurred in such breach of duty. The defendant Ricks cannot therefore urge this objection."

The very transaction between Carroll and the bank itself imported a diversion of a trust fund to which the bank, was accessory.

In *Oglesby* v. *Foley,* 153 Ill., 19, 38 N. E., 557, re-lied on by the bank, an opinion was indicated that in such circumstances, since the clerk had the right to receive the money under his duty to collect it, "the time and manner in which he got it are of no con-sequence." The result reached by the court in that case was probably correct, though we cannot at all assent to the reasoning in support of the judgment. There the clerk and master in chancery had forged an addendum to the decree, after its approval by the court, so as to cause the record to show in himself power, under direction, to sell and assign notes exe-cuted to secure deferred payments, at their face value, and to distribute the proceeds. The suit was one by sureties to be subrogated and to be permitted to collect from the makers of the notes, who had already paid the notes to the assignee. It was an abundant reply to hold that the act of forging the record was not participated in or known to the mak-ers of the notes. The argument of the court is mani-festly unsound.

In our opinion the court of civil appeals erred in reversing the decree of the chancellor. Grant the writ of *certiorari,* and enter a decree here reversing the decree of the former court and affirming the de-cree of the latter.