FIRST TEXAS STATE INS. CO. v. BURWICK. (No. 110.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 8, 1917. Rehearing Denied March 21, 1917.)

1. JUDGMENT ☞256(2)—CONFORMITY TO VERDICT—SPECIAL ISSUES.

Where jury's verdict is returned upon special issues submitted, and is within itself unambiguous, the trial court has only two alternatives, and must either enter judgment on the verdict, or set it aside and grant a new trial.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 447.]

2. APPEAL AND ERROR ☞719(10) — ASSIGNMENTS OF ERROR—CONSIDERATION.

In an action submitted on special issues, the verdict was for plaintiff. In its motion for a new trial, defendant claimed in general terms that the verdict was unsupported by the law, and the evidence, but on appeal did not assign as error the action of the trial court in refusing to set aside the verdict on any of the special issues submitted on the ground that it was unsupported by the evidence. Defendant, however, assigned errors that the court erred in entering judgment for plaintiff on the ground that the verdict was unsupported by and contrary to the overwhelming preponderance of the evidence. Rev. St. 1911, art. 1986, declares that a special verdict shall as between the parties be conclusive as to the facts found. Held, that the assignments of error complaining that the special verdict was unsupported by the evidence could not be considered, for where a special verdict is unambiguous, the court must either render judgment thereon or set it aside and grant a new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2979, 2982, 3490.]

3. INSURANCE ☞602—ACCIDENT AND HEALTH POLICIES—ATTORNEY'S FEE.

In an action on an accident and health policy, brought after the time provided by statute for payment, where the jury found for plaintiff, the award of the statutory penalty and a reasonable attorney's fee is proper.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1498.]

4. EVIDENCE ☞448 — PAROL EVIDENCE — INSURANCE POLICIES—AMBIGUITY.

Where the fact that blanks left for answers to questions in application as to whether insured was suffering from diseases, etc., showed that he was not so suffering, oral evidence that when the insured denied a diseased condition, the answers were left blank, was inadmissible; the policy itself being unambiguous.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2066–2082, 2084.]

5. APPEAL AND ERROR ☞1050(1)—REVIEW—HARMLESS ERROR.

In an action on a health and accident policy, where the only notice by the insurer of a denial of liability was to the attorney for the beneficiary, the admission of testimony that the attorney had instructed the beneficiary to notify him if she received notice of a denial of liability, was not prejudicial if erroneous.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157.]

6. EVIDENCE ☞536 — OPINION EVIDENCE — ADMISSIBILITY.

In an action on an accident and health policy, where deceased met his death by a gunshot wound, one who had made experiments with pistols in determining how far the weapon would have to be from the object to powder-burn it, may testify as to that fact; it appearing that he tested a number of pistols of different calibers.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2343, 2344, 2347.]

Appeal from Jasper County Court; C. C. Brown, Judge.

Action by Mrs. M. A. Burwick against the First Texas State Insurance Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood and J. C. Townes, Jr., all of Houston, for appellant. Powell & Huffman, of Jasper, and Parker & Kennerly and J. J. Lee, all of Houston, for appellee.

HIGHTOWER, C. J. This is a suit upon an accident and health insurance policy. On November 30, 1914, Charley Burwick, of Kirbyville, Tex., made application in writing to the First Texas State Insurance Company, appellant here, for an accident and health policy, stating his occupation as that of "sawmill foreman, supervising only," and warranting (among other things) that he had not had any surgical or medical treatment during the past five years, and that he had not suffered from any disease or infirmity, mental, physical, nervous, venereal, chronic, or inherited, and had not been disabled by any accident or illness during the past 5 years.

Upon this application the insurance company issued its policy to said Charley Burwick, agreeing to pay various amounts under various circumstances. The policy provided that if the insured lost his life as the result of bodily injury, sustained solely through external, violent, and accidental means, within 90 days from the date of the accident, the company would pay the beneficiary, Mrs. M. A. Burwick, mother of Charley Burwick, $750, subject to certain conditions set out in the policy. The insurance contract further provided that if the insured was injured fatally, or otherwise, after having changed his occupation to one classified by the company as more hazardous than that stated in the policy, or if he was injured while doing any act or thing pertaining to any occupation so classified, that the liability of the

company would be only for such proportion of the principal sum, or other indemnity, as the premium paid by him would purchase, at the rates fixed by the company for such more hazardous occupation. The insurance contract further provided that in the event of death, loss of limb or sight, caused by injuries intentionally inflicted upon the insured by himself, or any other person (excepting only attacks upon the person of the insured for the sole purpose of effecting robbery or burglary), the company should pay but one-tenth the amount otherwise payable. The schedules, agreements, and warranties made by Charles Burwick were incorporated in and made a part of the insurance contract. The premium agreed upon to be paid by Charley Burwick was $2.45 per month.

On the night of January 5, 1915, at which date said policy was in force, Charley Burwick, while engaged with other local white men in a search for a negro accused of having committed a crime, received two gunshot wounds, from which he instantly died. Mrs. M. A. Burwick, mother of deceased, appellee, filed with the insurance company proof of death in the form of an affidavit, dated January 21, 1915, in which she stated, among other things, that the deceased died from gunshot wounds while acting in the capacity of deputy sheriff. This affidavit and proof of death was filed with the insurance company about January 21, 1915, and appellee, about the same time, demanded of appellant the payment of said sum of $750, which demand was in writing, and appellant refused to pay the same. Whereupon, on June 3, 1915, this suit was filled in the county court of Jasper county, Tex. The petition sets out the insurance policy in full, and further alleges that Charley Burwick died on January 5, 1915, from violent, external, and accidental means. Appellee prayed for judgment for $750, the full amount of the policy, and for 12 per cent. penalty, and $150 attorney's fee.

Appellant filed its first amended original answer on October 6, 1915, which consists of: (1) General demurrer. (2) General denial. (3) A special denial of the allegation that the deceased met his death directly and exclusively from accidental causes. (4) That at the time and upon the occasion of the death of Charley Burwick, he was not acting in the capacity of sawmill foreman, but was acting in the capacity of deputy sheriff, and that he was doing an act or thing pertaining to an occupation which the company classes as more hazardous than that of sawmill foreman, and that, therefore, the appellee could in no event recover more than $600, the amount of insurance which the premium paid by Charles Burwick would purchase in the more hazardous occupation. (5) Further, that the death of assured was caused by injuries intentionally inflicted upon him, and that, consequently, under the terms of the policy, the appellee could in no event recover more

than one-tenth of the amount otherwise payable. (6) By way of further special defense, that the policy sued on was void and entirely uncollectible, because procured by means of fraud and false statements and warranties, made by the assured in his application for the policy; these misrepresentations and breaches of warranties are set out at length in the answer; they are to the effect that the assured in fact suffered from a serious disease material to their risk, and was treated by a physician in less than 5 years before the making of the application, and misstated the facts with reference to his condition and treatment; further, that the defendant company did not discover the falsity of these statements or warranties until on or about January 22, 1915, and within less than 90 days from that date, notified the appellee, through her agent and attorney in fact, that it refused to be bound by the terms of the policy.

The case was tried before a jury, under a charge in the form of special issues, and on the answers of the jury to these issues, a judgment was entered in favor of appellee for the full amount sued for, including penalty and attorney's fee.

At the conclusion of the testimony, appellant requested the court to peremptorily instruct the jury to find in favor of the defendant, which request was refused, and appellant excepted, but there is no assignment in this court challenging the action of the court in overruling the peremptory instruction. After the peremptory instruction requested by appellant was refused, both appellee and appellant requested the court to submit the case to the jury upon special issues, as follows:

Issue No. 1: Was Charley Burwick killed intentionally or unintentionally? The jury answered, "Unintentionally."

Issue No. 2: Was Charley Burwick acting as deputy sheriff at the time he was killed, or was he doing any act or thing pertaining to such office? The jury answered, "No."

Issue No. 3: Did J. C. Townes, attorney for the defendant, on April 13, 1915, and after the defendant learned that Charley Burwick had a venereal disease within 5 years prior to the issuance of the policy, notify J. J. Lee, attorney for the plaintiff, that the defendant refused to be bound by the policy or contract? The jury answered, "No."

There were no further issues or questions submitted to the jury for their answers, nor any further charge of any character given them. Thereafter, and in due time, appellee filed her written motion, praying the court to enter judgment in her favor upon the verdict of the jury, and in response to the motion the court entered judgment in favor of appellee for the full amount of the policy, $750, with 12 per cent. penalty prayed for, and attorney's fee in the sum of $150.

The record does not disclose that appel-

lant, in the court below, made any request of the court to set aside the jury's verdict, as being unsupported by the evidence, or any of the issues submitted, but the record does disclose that appellant objected to the court's entering judgment in favor of appellee, as requested by appellee.

Appellant, in its motion for new trial, did claim, in general terms, that the verdict of the jury was "unsupported by the law and the evidence adduced on the trial." On this appeal, appellant does not assign as error the action of the trial court in refusing to set aside the verdict of the jury on any of the special issues submitted, for the reason that the verdict was unsupported by the evidence; but the complaint made by appellant, as shown by its assignments in its brief, commencing with assignment of error No. 1, to assignment of error No. 10, inclusive, is that the court erred in entering judgment in favor of the appellee on the verdict of the jury, on the ground that such verdict was not supported by the evidence, but was contrary to the overwhelming preponderance thereof.

[1, 2] By these first ten assignments of error, appellant challenges the correctness of the action of the court in entering judgment on the verdict as to every issue found in favor of appellee, but nowhere in its brief have we been able to find an assignment challenging the action of the trial court in refusing to set aside the verdict of the jury, or challenging the action of the court in refusing to grant a new trial on the ground that the verdict of the jury in favor of appellee was unsupported by the evidence. Therefore as to the first ten assignments of error made by appellant, we have concluded that the same must be overruled, because we understand it to be the rule, well established in this state, that where a jury's verdict is returned in favor of a party upon special issues submitted, and the verdict, within itself, is unambiguous and inconsistent, the trial court has only two alternatives, that is to say, the court must set aside the verdict of the jury and grant a new trial, or must enter judgment upon the verdict in favor of the party in whose favor the verdict is. If the party against whom the verdict is returned feels aggrieved, and thinks that the verdict is unsupported by the evidence, he should move the court to set aside the verdict for that reason, and if the court should refuse to set aside the verdict upon such request, and the party complaining appeals from the judgment rendered against him, the action of the court in refusing to set aside the verdict on the ground of the insufficiency of the evidence to support same should be challenged by proper assignment of error in the appellate court. But in this case, as before stated, there was no request by appellant made to the court below to set aside the jury's verdict on the ground that same is unsup-

ported by the evidence, unless the general complaint in the motion for new trial, that the same was "contrary to the law and the evidence adduced on the trial," but even then, we could not consider said assignments of error, for the reason that appellant nowhere challenges, by assignment, the action of the court in refusing to grant appellant's motion for new trial on the ground that the verdict of the jury was unsupported by the evidence.

In the case of Smith v. Hessey, 134 S. W. 256, the controversy there was submitted to the jury upon special issues, and the appellant in that case sought, on appeal, to attack the verdict of the jury on the ground that the same was unsupported by the evidence, etc., and the court said, among other things:

"It does not appear from appellant's brief that he made any motion to set aside the findings of the jury, and for a new trial, and, if he did so, he has not assigned error on the action of the court thereon. All of the assignments of error are to the action of the court in rendering judgment for the amount of $1,958.41, except one, which is as to the refusal of the court to submit a special issue requested by appellant. In the case of Scott v. Bank, 66 S. W. 485, this court, speaking through its present Chief Justice, said: 'It seems quite clear that, when a special verdict has been returned which entitles one of the litigants to a judgment, there are but two alternatives for the trial court. One is to set aside the verdict and grant a new trial, and the other is to render judgment upon and in conformity with the verdict. If the verdict is not supported by the testimony, what is the remedy of the party dissatisfied with it? * * * Can such dissatisfied party remain inactive and on appeal complain of the verdict or the failure of the court to set it aside on its own motion? Clearly not, because it is not the duty of any court to set aside a verdict unless requested so to do. * * * The law charges the party against whom the jury finds the facts with the knowledge of the fact that the verdict is contrary to his success, and that, unless he secures its removal, it will be followed by a judgment against him, regardless of what the evidence may be. This being the case, he must not only ask the trial court to set the verdict aside, but, if on appeal he seeks to complain on account of the verdict, he must do so under an assignment of error addressed to the action of the court in refusing to set it aside and grant a new trial.'"

See, also, article 1986, R. S. 1911; Hicks v. Armstrong, 142 S. W. 1195; Scott v. Bank, 66 S. W. 493; Waller v. Liles, 96 Tex. 21, 70 S. W. 17.

In view of the law, as announced by the above authorities, the reasoning of which we approve, we hold that appellant's assignments of error from 1 to 10, inclusive, cannot be considered by this court, and the same are overruled.

[3] Appellant's eleventh and twelfth assignments of error challenge the action of the court in rendering judgment in favor of appellee for attorneys' fee in the sum of $150, and for penalty in the sum of $90; but the same must be overruled, for the reason that jury, by the answers to special issues, found, in effect, that appellee was entitled to recover the sum of $750, the full amount of the

policy, and it was shown on the trial that the attorney's fee of $150 was a reasonable fee, and since the verdict of the jury must be upheld in this court, for reasons hereinbefore shown, and since it was shown by the undisputed evidence that appellee made written demand of appellant for the payment of said policy, as required by the statute, and did not file suit until the time had expired, as provided by statute, for the payment of such policy, in order to recover such penalty, the court had no other alternative than to render judgment in favor of appellee, both for the attorney's fee claimed, and the penalty provided by statute.

[4] By its thirteenth assignment of error, appellant challenges the action of the trial court in refusing to allow it to show by its witnesses, Bird and Flick, that under the fixed policy and custom of appellant, its agents were instructed to leave the answers to warranties in an application for insurance blank, unless the answer of the applicant showed that he had been suffering from disease, or had had medical treatment within five years next preceding the taking of the application. Appellant expected to show by these witnesses, who were its agents, that under the custom of the defendant company, leaving the answers blank, indicated to the company that the answers of the applicant were favorable to the risk, that the application was, in this respect, ambiguous, and that the ambiguity made parol evidence admissible, under the pleadings. We overrule this assignment, because there is nothing in the contention that the application was ambiguous, but it is clearly apparent therefrom, and must have been so to the jury, that the applicant, Charley Burwick, did state that he had had none of the diseases mentioned, or had not been treated, as therein mentioned, within the period of five years next before the application. The assignment is overruled.

[5] By its fourteenth assignment of error, appellant claims that the court erred in permitting appellee's witness, J. J. Lee, who was her attorney, to testify with reference to what he (Lee) advised his client about notifying him as to any notice given her by the defendant denying liability under the policy, etc., on the ground that such advice was self-serving and hearsay, and secondary evidence, was testimony as to an ex parte transaction between Lee and the plaintiff, and was irrelevant and immaterial, and prejudicial. It was not contended by appellant on the trial below that any notice, other than the claimed notice to the witness Lee, as attorney for appellee, was given by appellant that liability under the policy was denied. We do not think that the action of the court in permitting Lee to state that he had advised appellee to notify him if the company should notify her that liability was denied was prejudicial error, if error at all. Lee did not testify to anything that appellee told him about the matter, and the matter dropped right there. The assignment is overruled.

We have examined appellant's fifteenth assignment of error in connection with the record, and without discussing the same hold that the same shows nothing prejudicial to appellant, and the same is overruled.

[6] By its sixteenth assignment of error, appellant challenges the action of the court in permitting appellee's witness, C. S. Smith, to testify with reference to the distance that a pistol would have to be from an object to powder-burn the same, on the ground that the witness did not qualify himself as an expert in such matters, and further, because the evidence showed that different pistols have different results in this respect, owing to the size and caliber, and kind of cartridge, and the kind of powder used, and that it was not shown that the witness had ever observed the kind of pistol involved in this suit, as to whether it would produce powder burns, and at what distance, etc.

We have carefully considered this assignment, and have read the testimony of the witness C. S. Smith, which is to the effect that he was the sheriff of Jasper county; that he had had many years of experience in handling and using pistols of different makes and kinds; that he had owned more than 50 different pistols in his lifetime, and had used them frequently; that he had had on different occasions experimented to see how far a pistol would powder-burn an object fired at; that he had tried it from a foot to several feet distance; that he had handled and made the experiment with Smith & Weston pistols, caliber 38, as well as with other pistols, etc. When taken as a whole, the witness' testimony shows that he was competent to testify on this point. The assignment is overruled.

Finding no reversible error in this case, the judgment of the court below will be affirmed· and it is so ordered.