HARTFORD ACCIDENT & INDEMNITY CO. v. FARMERS NAT. BANK et al.—149 S. W. (2d) 473.

Middle Section. December 21, 1940.

Petition for Certiorari denied by Supreme Court, April 5, 1941.

J. Roy Hickerson, of Winchester, for Farmers Nat. Bank.

Roberts & Roberts, of Nashville, for Hartford Acc. & Indemnity Co.

Seay, Stockell & Edwards, of Nashville, for appellee New York Life Ins. Co.

FELTS, J.   Dick Taylor, Clerk and Master of the Chancery Court of Franklin County, Tennessee, died April 14, 1932. He was short in his account of back tax collections.  The Chancery Court of Franklin County adjudged that he had wrongfully appropriated to his own use $7,843.14 of this fund; that his executrix and the Hartford Accident & Indemnity Company, surety on his official bonds, should pay the State and County this amount plus 12½% penalty and 15%

attorney's fee, totaling $10,000; and that the surety upon paying this should be subrogated to all the rights of the State and County.

From 1924 until his death he had carried his account of back tax collections in the Farmers National Bank at Winchester, this account being labeled "Dick Taylor, Back Tax." A part of his misappropriations was effected by means of a large number of checks drawn for his own use and paid by the bank on this account. The surety, after paying the amount of the decree, filed the bill herein to recover of the bank the amount of such checks upon the ground that it participated in the breach of trust by paying the checks, knowing the account was a trust fund and the checks were for Taylor's own use. Recovery was also sought against the New York Life Insurance Company because one of these checks in the sum of $209.75 was given that company by Taylor in payment of a premium on his life insurance, the check showing it was drawn on the trust account.

Upon the hearing the Chancellor filed his opinion and findings that the account of "Dick Taylor, Back Tax" was "a trust account and not a mixed account;" and he referred the cause to the Master to report what checks were drawn for Taylor's own use and benefit and paid by the bank on this account, and whether the bank had actual or constructive notice that such checks were for Taylor's own use and benefit. The bank's petition for a rehearing upon the finding that the account was a trust account was denied.

The Master listed 198 checks, giving the date, amount, and payee of each, totaling $7,302.41, which he reported were drawn on this account and paid by the bank for Taylor's own personal use; and he reported that the bank had actual or constructive notice that all these checks were for Taylor's own benefit. The surety and the bank both excepted to the report. The surety's exceptions were overruled, and the bank's exceptions were overruled except as to two checks, both payable to Dick Taylor, one for $350 showing on its face it was for "Transfer fees and costs Back Tax," and the other for $200 showing it was for "Costs." These two items were eliminated, and the Master's report was in all other respects confirmed by the Chancellor; and he rendered a decree in favor of the surety against the bank for $6,752.41, with interest from the filing of the bill, $2,143.88, making $8,896.29, and against the insurance company for $209.75, with $66.55 interest, totaling $276.30, the decree providing that payment of the $8,896.29 by the bank would discharge the insurance company and payment of the $276.30 by the company would operate as a credit on the amount for which the bank was liable. The Chancellor dismissed the cross-bill of the insurance company by which it sought, if it should be adjudged liable, a recovery over against the bank upon the ground that by accepting and paying the check the bank admitted Taylor's authority to draw the check. Code, sec. 7386.

702

The bank appealed. It contends it had no actual knowledge, and upon the facts shown cannot be charged with constructive notice, that Taylor was misappropriating official funds, and it is not liable for any of the checks it paid on the account of "Dick Taylor, Back Tax."

As stated, this account ran from early in 1924 to April 14, 1932. During part of this period Taylor had three accounts in the bank, his individual account, his official account as Clerk and Master, and this back tax account. Sometime (date not appearing) after opening the tax account he discontinued his personal account, but continued to carry his Clerk and Master account until his death. The evidence in this case relates alone to the back tax account, nothing being shown as to the other two accounts. M. E. Chattin, the auditor, testified that Taylor's total collections of back taxes amounted to $22,538.21, his deposits in the account "Dick Taylor, Back Tax" aggregated $21,988.69, and Taylor's shortage was $11,279.08. Chattin testified that after allowing Taylor credit for all proper disbursements, including officers' costs, fees to back tax attorneys, taxes paid to the State and County, and Taylor's own costs, fees and commissions, Taylor's shortage was $11,279.08. Some 294 checks drawn by Taylor and paid by the bank on the back tax account were produced in evidence. Some 98 of these checks showed on their face they were given for official proposes, such as payment of taxes to the County Trustee and to the State Comptroller, refunds on taxes, advertising, stamps, fees to back tax attorneys, and officers' costs. These 98 checks given for official purposes aggregated $12,656.85. Three of these checks appear to have been payments by Taylor to himself of his own costs, fees and commissions. One of these checks was payable to "Dick Taylor, C. & M." in the sum of $1,820.84 and shows on its face it was for "Transfer Back Tax." Two of them were payable to Dick Taylor, one in the sum of $350 showing it was for "Transfer fees and costs Back Tax," and one for $200 showing it was for "Costs." These three checks to Taylor himself aggregated $2,370.84. Some 196 checks drawn on the back tax account which do not show they were drawn for official purposes were put in evidence. The total amount of these checks was $6,752.51. About 40 of these 196 checks show on their face that they were given for personal purposes of Dick Taylor, such as "corn," "lamps," "shoes," "pasturing cattle," "hay,' "acct.," "Dis. on 900 N.," premium on Dick Taylor's life insurance, etc. Many of these 196 checks, not showing the purpose for which they were drawn, were payable to merchants and tradesmen in Winchester who were known to the bank's officers. For instance, one of these checks was for $500 payable to the Wenger Auto Company for an automobile. Dick Taylor owed the bank two notes, one for $900 and one for $2,000. Nine of these 196 checks were payable to the bank itself, the first being January 2, 1929, and the last September 28, 1931. Three of these nine checks to the bank were for $30 each

and were for interest on the $2,000 note, and three were for $18· each and were for interest on the $900 note. Taylor was well known to the bank's officers, and was himself a stockholder and director of the bank. It is undisputed that these checks given to the bank were known to be for Taylor's own personal obligations and that a great many of the other checks were also known to be for Taylor's own personal use because they so showed on their face. We think also the bank's officers knew that the great number of checks given to merchants and tradesmen by Dick Taylor were for his own individual use. Thus it appears that of the $21,988.69 deposited by Taylor in the back tax account he withdrew, by checks on this account, $9,123.25, $2,370.84 of which appeared to be for his own costs, fees and commissions, and $6,752.41, amount for which the bank was held, appeared to be for his own personal use.

The bank's officers knew that the monies in the account "Dick Taylor, Back Tax" were collections of back taxes. They knew Taylor had no source of income except his office as Clerk and Master; and they knew he was drawing checks promiscuously on this account for his own individual purposes. We think the evidence warrants the inference that soon after opening the back tax account Taylor discontinued his personal account and began to use the back tax account much as if it were his personal account.

██ The monies deposited in this back tax account were a trust fund, in custodia legis, and none of it could be paid out except by authority of a statute or a decree of the court. Dobbins v. Carroll, 137 Tenn., 133, 193 S. W., 166; Marion Trust & Banking Co. v. Roberson, 151 Tenn., 108, 268 S. W., 118; Atchley v. Isbill, 3 Tenn. App., 325; Gibson Suits in Chancery, Chambliss Ed., secs. 644, 1166. The bank was charged with knowledge of the trust character of the fund and of these restrictions upon the authority of the Clerk and Master, as a matter of law. New York L. Ins. Co. v. Bank of Com. & Trust Co., 172 Tenn., 226, 232, 111 S. W. (2d) 371, 373, 115 A. L. R., 643; Moneypenny v. Third Nat. Bank, 172 Tenn., 237, 243, 111 S. W. (2d), 375, 377.

██ A bank in which a fiduciary carries his trust account has no duty to administer the trust or supervise his administration of it, but may pay his checks regularly drawn on the account, upon the presumption that he is acting honestly and properly administering the trust, unless the circumstances are such as to put the bank upon notice that he is misappropriating or intends to misappropriate the trust funds which he seeks to withdraw. But if the bank with such notice pays the fiduciary's check and thus aids him in the accomplishment of his unlawful purpose, it participates in his breach of trust and is liable for his misappropiations. United States Fidelity & Guaranty Co. v. People's Bank, 127 Tenn., 720, 157 S. W., 414; American Surety Co. v. Grace, 151 Tenn., 575, 271

S. W. 739; New York L. Ins. Co. v. Bank of Com. .& Trust Co., 172 Tenn., 226, 111 S. W. (2d), 371, 115 A. L. R., 643; Moneypenny v. Third Nat. Bank, 172 Tenn., 237, 111 S. W. (2d), 375; Fidelity & Dep. Co. of Maryland v. Hamilton Nat. Bank, 23 Tenn. App., 20, 126 S. W. (2d), 359, and cases there cited; 7 Am. Jur., secs. 521, 522, pp. 375, 376; 9 C. J. S., Banks and Banking, secs. 338, 339, pp. 680-682.

What is sufficient to put a bank upon such notice depends upon the particular facts and circumstances of each case. United States Fidelity & Guaranty Co. v. People's Bank, supra; 7 Am. Jur., sec. 522, p. 376. For instance, allowing the fiduciary to deposit known trust funds to his individual account and then to disburse the funds for his own personal use by his individual checks to third persons has been held sufficient to charge the bank with participation in the breach of trust. United States Fidelity & Guaranty Co. v. People's Bank, supra; Bankers Liability for Deposits of a Fiduciary to his Personal Account by Maurice H. Merrill, 40 Harvard Law Review, 1070-1109. Though this is not sufficient where the bank has no notice that such checks are given for non-trust purposes. American Surety Co. v. Grace, supra. The bank's receipt of such trust monies in payment of the trustee's own personal indebtedness to the bank, makes the bank a participator in the breach of trust. Bogert on Trusts and Trustees, Vol. 4, sec. 907, pp. 2627-2631; American Surety Co. v. Grace, supra; Fidedity & Dep. Co. of Maryland v. Hamilton Nat. Bank, supra. And notice to the bank of one breach of trust by the fiduciary destroys the presumption that he will thereafter act honestly and properly administer the trust, and puts the bank under the duty of making reasonable inquiry and endeavor to prevent subsequent breaches. Bogert on Trusts and Trustees, Vol. 4, sec. 912, pp. 2640, 2641; Bischoff v. Yorkville Bank, 218 N. Y., 106, 112 N. E., 759, L. R. A., 1916F, 1059. See Barry v. Hensley et al., 170 Tenn., 598, 98 S. W. (2d), 102; New Amsterdam Casualty v. Robertson, 129 Or., 663, 278 P., 963, 64 A. L. R., 1396.

Under the foregoing authorities, we think the course of Taylor in regularly giving checks on this trust account, many of which were known by the bank to be for his own personal use, put upon the bank the duty to inquire and it is chargeable with what could have been ascertained if such inquiry had been properly made. The bank admits that it made no inquiry but honored all of the checks drawn by Taylor. That is to say that Taylor and the bank joined in treating this account as if it had been the personal account of Taylor. In view of these facts, in the light of the foregoing authorities, we think the learned Chancellor properly held the bank liable for participating in the breaches of trust by which Taylor's misappropriations were accomplished.

Learned counsel for the bank insists that the back tax account was a mixed account in the sense that it contained Dick Taylor's own costs, fees and commissions, and some personal monies of his own which he deposited in the account; that to the amount of such costs, fees, commissions and personal monies he had a right to give checks on the back tax account for his own personal uses; and that the bank could not know whether any check given for his personal use overdrew the amount of his fees, costs, commissions and personal monies, and the bank had the right to honor all such checks.

There is no evidence that Taylor deposited any of his personal money in the account. There was a discrepancy of some $1,800 between the amounts deposited in the back tax account and the amount of receipts which he had issued, but the auditor testified that he could not say that this excess of the deposits over the amount of receipts represented personal monies deposited in the account. The auditor's testimony was that the back tax collections were in excess of the deposits in the account. So there is nothing to justify the assumption that Taylor had any personal monies in the back tax account. But he does seem to have had some fees, costs and commissions in the account. However, this did not make it a mixed account or entitle him to draw generally upon the account for his own personal uses. Speaking of money in the hands of the Clerk and Master, Gibson Suits in Chancery, Chambliss Ed., sec. 1166, says:

"None of the money belongs to him, nor has he any right whatever to use any portion of it, not even his own costs, until the court so orders."

There were no orders allowing him to withdraw his costs, fees and commissions except in four cases and the amount of such costs, fees and commissions in these four cases is not shown. The fact that he could have obtained proper orders and withdrawn costs, fees and commissions to which he might have been entitled from the account, did not give him a right to draw generally upon the account for his personal uses. The bank was chargeable with all the knowledge which it could have obtained from pursuing the inquiries it was bound to make and it could have learned therefrom that Taylor had no right to draw any of the 196 checks which it paid for his personal use and for which it was held liable.

For the foregoing reasons we think there was no error in the Chancellor's decree against the bank.

The New York Life Insurance Company has assigned errors by which it complains of the decree holding it liable for the amount of the check it received and also of the dismissal of its cross-bill. This check was drawn on the back tax account and signed "Dick Taylor B. Tax," thus showing it was drawn on the trust fund. Under the foregoing authorities, we think the insurance company was chargeable as a matter of law with notice of Taylor's want of

authority to draw such a check to pay his own personal obligation to the insurance company; and that by accepting this check the insurance company participated in the breach of trust and was properly held liable for the amount of the check. The insurance company insists that the bank, by accepting and paying the check, admitted Taylor's authority to draw the check, Code, sec. 7386, and that the Chancellor should have held the bank liable to the insurance company. We do not think so. We think the insurance company must be held as a matter of law to know that Taylor had no authority to draw the check and that the bank had no right to pay it.

All the assignments of error are overruled. The Chancellor's decree is affirmed. A decree will be entered here in favor of the Hartford Accident & Indemnity Company against the Farmers National Bank and the sureties on its appeal bond for the amount of the decree below, with interest, and the cost of the appeal, and against the New York Life Insurance Company for the amount of the decree below, with interest, with the provision that payment by the bank of the amount decreed against it will discharge the insurance company and payment by the insurance company will operate as a credit on the amount for which the bank is liable.

Crownover, J., and Higgins, S. J., concur.