WHITMORE & KENDALL, Executors, *v.* MRS. CARRIE RAS-
COE *et al.*

*(Nashville.* December Term, 1903.)

1. **HOMESTEAD AND DOWER.** Allowed widow out of person-
alty by substitution or subrogation, where land has been sub-
jected to payment of lien debt, when.

The rights of the widow to homestead and dower are superior to
the claims of general creditors of her deceased husband and,
as the decedent's personal estate is the primary fund
for the payment of all his debts, including his personal debts
that are liens on his land, if the lien creditors subject the
land to the payment of their lien debts, without resorting to
the personalty for payment, the widow is entitled to be sub-
stituted or subrogated to the rights of such lien creditors for
reimbursement out of the personalty for the loss of homestead
and dower in the land so subjected to the payment of the lien
debts, notwithstanding the insolvency of the personal estate.

Code cited and construed: Sec. 3985 (S.); sec. 3090 (M. & V.);
sec. 2252 (T. & S. and 1858).

Case cited and approved: Yoe v. Sansom, 48 S. W., 317.

Cases cited, approved, and distinguished: Williams v. Woods,
1 Hum., 408; Boyd v. Martin, 9 Heis., 384; Featherston v.
Boaz, 2 Tenn. Cases, 296; Gwynne v. Estes, 14 Lea, 672, 673;
Gibson v. Crehore, 5 Pickering, 146; Creecy v. Pearce, 69 N. C.,
67.

2. **SAME. Same. Not defeated by marshaling assets, when.**

Homestead and dower will not be defeated by the marshaling
of assets, as the rule for marshaling assets is inapplicable
to a case where the widow is asserting her right to homestead
and dower against the general creditors of her deceased hus-
band's estate. (*Post, pp.* 635-636.)

Cases cited and approved:  Gwynne v. Estes, 14 Lea, 673; Gilliam v. McCormack, 85 Tenn., 598; White v. Fulghum, 87 Tenn., 288.

3.  **ADMINISTRATION AND INHERITANCE.** Heir or devisee may be reimbursed out of personalty for land sold to pay lien debts thereon as against the distributee or legatee, but not as against creditors.

The rights of creditors of a decedent are superior to the claims of the heir or devisee, and where the land has been subjected to the payment of a lien debt thereon, the heir or devisee is not entitled to subrogation, or reimbursement out of the personalty, as against the creditors, but he is entitled to such subrogation or reimbursement, as against the distributee or legatee.  (*Post, pp.* 628-632).

Case cited and approved:  O'Conner v. O'Conner, 88 Tenn., 76.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —JOHN ALLISON, Chancellor.

VERTREES & VERTREES, for Whitmore & Kendall, Executors.

L. R. CAMPBELL and THOS. S. WEAVER, for Tennessee School for the Blind.

SMITH & MADDIN, for Fourth National Bank.

Whitmore & Kendall v. Rascoe.

H. H. BARR, for Spurlock, Neil & Co.

GRAFTON GREEN, for Mrs. Carrie Rascoe.

E. B. WILSON, Guardian *ad litem.*

MR. JUSTICE MCALISTER delivered the opinion of the Court.

This record presents a contest between the widow and general creditors of Lou Rascoe, deceased, in respect of the allotment of dower and homestead. The material facts found by the court of chancery appeals are as follows:

Lou Rascoe died intestate in Davidson county leaving a widow and several children. He owned at his death considerable personal property, but was indebted in an amount exceeding its value, and hence was insolvent. The only real estate he owned was a house and lot on West Broad street in the city of Nashville, which was incumbered by a vendor's lien retained in the face of the deed to secure the balance of the purchase money, amounting to about $3,500.

The complainants, as his administrators, filed this bill to wind up his estate as an insolvent estate. R. W. Turner became the owner of the vendor's lien notes given for deferred payments on the house and lot on West Broad street.

The widow filed her petition herein alleging that, notwithstanding said lien notes were a primary charge on the personal estate of her husband, said Turner refused

to file his claim with the administrators for payment, and insisted on enforcing his lien against the real estate, and that he has enforced it by the sale of the same, at which sale it brought $4,825, and that out of this sum he is entitled to retain $3,431.67, the amount of his debt, costs, taxes, etc., and that this leaves a balance in the hands of said Turner of $1,383.33, which represents the real estate of her deceased husband, and which sum she prayed that Turner be required to pay into court.

The administrators of her husband, the said R. W. Turner, and certain other parties were made defendants to the petition of the widow.

It further appears that the personal estate of Lou Rascoe, deceased, will pay only forty or fifty per cent of his indebtedness.

The claim made on behalf of the widow is that the vendor's lien debt was a primary charge on the personal estate, notwithstanding its insolvency, and that the real estate, having been sold for the satisfaction of the lien debt, the widow is entitled to dower and homestead, not only out of the surplus arising from the sale of the realty, but out of that surplus augmented by the *pro rata* to which the lien creditor was entitled out of the personal assets of the insolvent estate. In other words, it is claimed that the widow was entitled to be subrogated to the rights of the lien creditor, R. W. Turner, in the personal assets to the extent said lien creditor would have shared had he filed his claim against the personal estate.

The administrators answered denying that the widow is entitled to dower and homestead except out of the surplus proceeds of the real estate.

The Spurlock-Neil Company and the Tennessee School for the Blind, general creditors of Lou Rascoe, deceased, demurred to the petition, assigning for cause, first, want of equity on the face of the petition, second, because it shows that Turner as vendor retained a lien on the real estate mentioned in the petition for the enforcement of which it was sold; third, because the petition shows that the estate of Lou Rascoe was insolvent.

The Fourth National Bank of Nashville was permitted to join in the demurrer of the Spurlock-Neil Company and others already mentioned.

The contention made on behalf of the creditors is that the widow is only entitled to dower and homestead out of the surplus of the proceeds of the real estate, and that estate being insolvent, the personal estate was not the primary fund for the payment of the lien debt and that the vendor was not entitled to trench upon the personal assets.

The several demurrers interposed on behalf of the creditors were overruled by Hon. Jno. Allison, chancellor, from which decree, in the exercise of his discretion, he permitted an appeal to this court.

The court of chancery appeals in dealing with the questions presented proceeded along this line of reasoning. Said Judge Wilson, speaking for that court:

112 Tenn—40

"The right asserted on behalf of the widow assumes the proposition not only that the personal estate of her insolvent husband afforded the primary fund for the payment of his general creditors, but that it also afforded the first and primary source for the payment of a debt that was a specific lien and charge on his real estate. Certain rules applicable to the question in hand are settled by our legislation. In the first place, under our statutes, both the real and personal estate of a decedent, except such as is specially exempt by law, are assets for the payment of his debts. Code, Shannon, sec. 3985. But while this is so, it will not be contended that the rights of general creditors of a decedent are, with respect to his real estate, superior to the rights of his widow to dower and homestead therein. The rights of the creditors are superior to the rights of an heir. The vendor's lien creditor has a right to subject the land on which his lien exists to sale to pay his debt, and this right is superior to any right of the widow in the land. All this is familiar law."

"But," continues the court, "has the specialty creditor of an insolvent deceased debtor having a lien on his land, as against general creditors, any right to a *pro rata* upon his debt from the personal estate of his debtor, until he has exhausted his real estate security? In other words, is the lien debt on the land of an insolvent a primary charge on the personalty of the debtor?"

That court stated the fundamental rule of law to be

that the personalty of an intestate is the primary fund for the payment of a vendor's lien debt created by the intestate and that the widow's right to dower and homestead in the realty of her husband is superior to the rights of his general creditors.

"If, therefore," continues the court, "the personalty of an intestate is the primary fund for the payment of a lien debt created by the intestate on the land, and if the right of his widow to dower and homestead in his land is superior to that of his general creditors, the conclusion is logically inevitable, it seems to us, that, if the lien creditor passes by the personalty, the primary fund for the payment of his debt, as he may, and sells the land to pay his debt, the widow may compel reimbursement to her dower and homestead rights out of the personalty to the extent to which the personalty was liable for the debt, the enforcement of which deprived her of these rights."

It is insisted on behalf of learned counsel for appellant creditors that the fundamental error in the opinion of the court of chancery appeals is in the assumption that the personal estate of an insolvent debtor is the primary fund for the payment of a debt secured by vendor's lien retained on his real estate. The insistence of counsel is that the rule that the personal estate is the primary fund for the payment of debts is one that will not be applied to the prejudice of creditors, and, hence, will not be applied in favor of a lien debt on the realty where the estate is insolvent, citing 2 Washburn on Real

Property, sec. 7, paragraphs 1, 2 and 3; 3 Williams on Executors, p. 1694 (bottom); p. 1695 (bottom); 19 Amer. and Eng. Ency. of Law, 1627; *Gibson* v. *Crehore,* 5 Pick., 146; *Creecy* v. *Pearce,* 69 N. C., 67.

In 3 Williams on Executors, p. 1694, it is said:

"In order, therefore, to support and enforce the primary liability of the personal estate as between the representatives of the deceased debtor, it is an established rule in equity that, if the creditor proceeds against the real estate descended or devised, the heir or devisee, who has sustained the loss, shall be allowed to stand in place of the personalty creditor, to reimburse himself out of the personal estate in the hands of the executors.    Provided such reimbursement will not prejudice any of the creditors or any other party having an equal or a more favored claim than the heir or devisee respectively."

"Again, it is discretionary with a mortgagee whether he will proceed for the recovery of his mortgage debt against the mortgaged land which has come to the heir or devisee of the mortgagor, or against his executor. But if the mortgagee recovers against the land, the heir or devisee shall (unless the case is within the operation of the statute 17 and 18 Vict., etc.) be reimbursed out of the personal estate of the mortgagor.    But the land cannot be exonerated out of the personal estate to the prejudice of any person having a prior claim to be satisfied. And, therefore, the heir or devisee shall not stand in place of the mortgagee against the personal assets, if by doing so he would disappoint any creditor or any

Whitmore & Kendall v. Rascoe.

legatee, or his wife's claim to paraphernalia." 3 Williams on Executors, pp. 1695 and 1696 (bottom).

We do not think these authorities necessarily militate against the views expressed in the opinion of the court of chancery appeals. The text of the authors quoted distinctly recognizes the proposition that a lien creditor may look for the satisfaction of his debt to the personal estate as a primary fund. But the real estate charged with a lien debt cannot be exonerated out of the personal estate to the prejudice of any person having a prior claim. The heir or devisee whose land has been taken cannot therefore be subrogated to the rights of the lien creditor and have exoneration out of the personal estate as against any creditor, for the very obvious reason that the rights of the creditor to the personal estate are superior to the claim of the heir or devisee for subrogation or reimbursement for land subjected to the satisfaction of a lien debt. But it must be remembered that we are now dealing with the claim of the widow to dower and homestead, which is superior to that of any general creditor, and if real estate has been taken for the satisfaction of a lien debt, the widow is entitled to have her claim satisfied out of any surplus that may remain, and if the creditor was entitled to a *pro rata* on his debt out of the personal estate, we perceive no reason why the widow cannot be subrogated and substituted to that right.

In *O'Conner, Admrx.,* v. *O'Conner,* 88 Tenn., 76, a contest was presented between the widow and heirs at

law of an intestate in respect of the heirs to be reimbursed from the personalty which descended to the widow for land taken in satisfaction of lien debts. It is true the claims of creditors were not presented in this case.

Judge Lurton, delivering the opinion of the court, said:

"It is a general rule of common law and in equity that debts shall be primarily payable out of the personal estate and that the land shall only be subjected as auxiliary to the personalty. In this State, by statute, both the personalty and the lands of an intestate are assets for the payments of debts, but the latter can not be subjected until the former is exhausted. These principles are fundamental and need no elaboration. When, therefore, a creditor whose debt is secured upon the land, elects to go upon the latter, as he may, the heir will be reimbursed out of the personalty. This is the undisputed rule where the debt was the personal debt of the intestate and one originally created by him. In every such case the election of the creditor to enforce his mortgage is not suffered to disappoint the heir; for the personalty, being the primary fund for the payment of such debts, it must reimburse the heir for the loss of the land, the latter being entitled to exoneration." "Thus far," says the court, "there is no room for controversy. Neither can it be seriously denied that in the case under consideration the creditor could, at his election, have recovered the debt secured by the lien from the personal represen-

tative." In that case the court sustained the claim of the heir to compel the widow, who was sole distributee of the personalty, to reimburse the heir for the loss of the land. It cannot be denied that the widow's right to dower and homestead is superior to the claim of the heirs to land belonging to an intestate decedent. Of course it was not decided in *O'Conner* v. *O'Conner,* 88 Tenn., 76, supra, that the right of the heir whose land had been taken in payment of a lien debt to exoneration out of the personal estate could be maintained to the disappointment of any general creditor, for the claim of the creditor on personal estate is superior to the right of the heir to reimbursement out of the personalty, but it is settled by the O'Conner case that the personal estate is the primary fund for the payment of a lien debt, and that, if the lien creditor elects to sell the land to pay his debt, the heir may be reimbursed from the personalty, provided the rights of creditors are not defeated; hence, the claim of the widow who has been disappointed in the allotment of dower by the sale of realty may be reimbursed out of the personalty, although creditors may be thereby disappointed, for the rights of the widow to homestead and dower are superior to the claims of creditors. Nor do we perceive any sound reason for the distinction sought to be maintained by the learned counsel between solvent and insolvent estates.

It is true that it is stated in 2 Washburn on Real Property, pp. 206 and 207, that if the estate of a deceased mortgageor be insolvent the court will not apply

the personal to the relief of the real estate, citing *Gibson* v. *Crehore,* 5 Pick., 146, and *Creecy* v. *Pearce;* 69 N. C., 67.

This precise question arose in *Yoe* v. *Sansom,* 48 S. W., 317. In an opinion delivered by the court of chancery appeals and affirmed orally by this court, the facts presented were:

Yoe died intestate. The personal estate was insolvent. Yoe had only one piece of real estate, his home, which was mortgaged to an insurance company for $3,500. Mrs. Yoe joined in the mortgage, waiving homestead and dower. The realty was sold under the mortgage and the proceeds of the sale were just sufficient to pay off the debt, with interest, costs, and taxes, leaving no balance out of which homestead and dower might be set aside. As before seen, the personal estate was insolvent. At the time the foreclosure bill was filed there were no funds in the hands of the administrator out of which the debt could have been paid, but sufficient personalty afterwards came into his hands. The chancellor held that the widow was entitled to be reimbursed and paid the value of her homestead and dower in the tract of land sold.

"If the rule should be established that is now insisted upon by the administrator, it would result in many cases in the absolute absorption of the homestead, though there might be sufficient personal assets in the hands, or to come into the hands of the administrator to save it, and this without leaving any means in the hands

of the widow whatever.  It was a right she had in this
particular land, subject only to the prior rights of the
mortgagee, and with the right in her favor, as we believe
of having the personal estate first exhausted in the pay-
ment of the debt secured by the mortgage.  This right
we think would apply to the homestead and the dower.
Certainly, if the debt had been paid off, and for the debt
the personal estate was primarily responsible, no ques-
tions could have been raised as to the rights of the widow
both to homestead and dower in the land.  Technically
and theoretically, difficulties may be suggested, whatever
view is taken of the case, but we can see no practical dif-
ficulty in, and certainly no injustice to result from, ex-
tending to the widow the same protection and enforce-
ment of her right that has always been extended to the
heir.  When occasion has arisen, her rights, and espec-
ially the right of homestead, have always been zealously
protected.  The courts have frequently directed, as in
the case of guardians for minors, where the corpus of
the estate has been infringed upon, that they will ap-
prove after it is done that which they would have. al-
lowed before.  It seems equally logical to say, in as much
as the court before the foreclosure of the deed of trust,
would have, either at the instance of the creditor or the
widow, directed the payment of this debt, or at least its
*pro rata,* out of the personal estate in order to prevent
the foreclosure of the mortgage, the mortgage having
been foreclosed, out of the personal assets now realized

and in hand, the loss will be made good to the widow, as it would have been prevented in the first instance."

It is strenuously insisted, however, in the very able argument submitted by counsel for appellants, that the rule announced in *Yoe* v. *Sansom,* 48 S. W., 317, is unsound and in conflict with several adjudications of this court—citing *Williams* v. *Woods,* 1 Hum., 408; *Boyd* v. *Martin,* 9 Heisk., 384; *Featherston* v. *Boaz,* 2 Tenn. Cases, 296; *Gwynne* v. *Estes,* 14 Lea, 672, 673.

In *Boyd* v. *Martin,* 9 Heisk., 384, *supra,* this court said, "that the vendor's lien retained for unpaid purchase money is superior to the widow's right of dower. She can not have dower out of so much of such estate as is required to pay the purchase money. Of what, then, may she be endowed? Clearly, of so much as belonged to her husband's estate, legally or equitably.

If the house and lot sold for fifteen hundred dollars more than was sufficient to pay the vendor's lien, that sum belonged to the estate of Martin and the widow's dower of one-third is to be taken out of that sum. To hold that she would take all the surplus of fifteen hundred dollars would be to disregard the well-settled principle and rule of law that the widow shall have as a dower one-third part of all the land of which the husband was the legal or equitable owner at the time of his death. The husband was neither the legal nor equitable owner of the property until it was paid for, so as that widow, upon his death, was entitled to dower out of the whole, but her right to dower is restricted to one-

third for life of the surplus after satisfying the vendor's lien."

The rule laid down in *Williams* v. *Woods,* 1 Hum., 408, supra, that the widow is entitled to one-third of the surplus for life as dower after paying the purchase money has been uniformly followed. But in none of these cases was the precise question we are now considering presented. As stated by the court of chancery appeals, it does not appear from the opinions in those cases that the deceased husband left any personal estate liable for the payment of the lien or any other debt, or that any effort was made by the widow to reach the personal estate to compel it to make good the loss of her dower interest in the payment of the lien debt.

It is further insisted that the opinion in *Yoe* v. *Sansom,* 48 S. W., 317, ignores the well-recognized rights of the general creditors under the doctrine of the marshaling of assets which would have enabled them either to have compelled the holder of the vendor's lien debt to look to the land alone for the satisfaction of his debt, or, failing in that, would have entitled them to be subrogated or substituted to the rights of the vendor against the land to the extent that the personalty as used in paying the lien debt.

But the principle invoked for the marshaling of assets has been repeatedly held to be inapplicable to a case where the widow is asserting her right of dower and homestead against the general creditors of her hus-

band's estate. *White* v.*Fulghum,* 87 Tenn., 288; *Gwynne* v. *Estes,* 14 Lea, 673.

In *White* v. *Fulghum,* 87 Tenn., 288, supra, was stated that in several cases where the doctrine of marshaling securities was fully recognized and would have otherwise been administered in all its force, its application was refused by the courts of other States, because to apply it would be to destroy the right of homestead.

In the case of *Gwynne* v. *Estes,* 14 Lea, 673, supra, the claim of dower was allowed to prevail against the effort of the creditors to marshal securities. See also *Gilliam* v. *McCormack,* 85 Tenn., 598.

We regard the questions presented in this case as thoroughly settled by the adjudications of this court, and do not feel constrained to review the authorities of other States which announce a contrary rule.

It results that the decree of the chancellor and of the court of chancery appeals will be affirmed.