AMERICAN SURETY CO. *v.* D. K. GRACE *et al.*

(*Nashville.* December Term, 1924.)

1. **APPEAL AND ERROR.** Debtor held, in view of acquiescence of creditors and decree, not entitled to complain of surety, suing on theory of subrogation, not having paid creditors.

Bank, sued as party to principal's misappropriation, may not complain that surety, suing on theory of subrogation to rights of creditors, has not paid the creditors, where the latter are in court acquiescing, and all parties are protected by decree. (*Post, pp.* 580, 581.)

Case cited and approved: Knaffl v. Knoxville Banking & Trust Co., 133 Tenn., 655.

2. **EXECUTORS AND ADMINISTRATORS.** Heirs entitled to have purchase-money notes given by intestate discharged from personal estate.

The personal estate of intestate is primarily liable for all her debts, and her heirs are entitled to have her administrator, out of assets coming into his hands, discharge the purchase-money notes given by her and constituting liens on the real estate. (*Post, pp.* 581, 582.)

Cases cited and approved: O'Conner v. O'Conner, 88 Tenn., 76; Whitmore v. Rascoe, 112 Tenn., 621.

Code cited and construed: Sec. 4172 (T.-S.).

3. **DESCENT AND DISTRIBUTION.** Personal property of deceased wife, though taken by husband by virtue of marital rights, subject to payment of debts.

Though husband takes personal property of deceased wife by virtue of his marital rights, and not under statute of distribution, it is none the less charged with her indebtedness; every debtor's property, except such as is exempt, being, by provision of Thompson-Shannon Code, section 3985, assets for satisfaction of all his debts. (*Post, pp.* 582, 583.)

American Surety Co. v. Grace.

Case cited and approved: Hamrico v. Laird, 18 Tenn., 222.

Cases cited and distinguished: Hays v. Bright, 58 Tenn., 325; Jones v. Walkup, 37 Tenn., 135.

Code cited and construed: Sec. 3985 (T.-S.).

4. **DESCENT AND DISTRIBUTION.** Husband may not appropriate any of deceased wife's personal property till payment of all her debts, or give a purchaser with notice title free from debts.

Husband, taking the personal property of deceased wife, charged with payment of her debts, may not appropriate to himself any of it till all her debts are paid, nor can he, before such payment, confer on a purchaser with notice title to any of it that will prevail over claims of her creditors. (*Post, pp.* 583, 584.)

Cases cited and approved: Pinson v. Ivey, 9 Tenn., 297; Craig v. Leiper, 10 Tenn., 193; University v. Cambreling, 14 Tenn., 79; Williams v. Love, 39 Tenn., 80; Young v. Adkins, 51 Tenn., 529; Woodward v. Bird, 105 Tenn., 671; Ford v. Brown, 114 Tenn., 467.

5. **TRUSTS.** Presumption of withdrawal from mixed fund, being trustee's own money, not indulged to protect him or party to his misappropriation.

Presumption that, where trustee blends in a bank his own money with trust money, the withdrawals will be presumed to be his own funds, will not be indulged to protect an unfaithful trustee or a party to his misappropriation, and to the detriment of the beneficiary. (*Post, pp.* 584, 585.)

Case cited and distinguished: Bragg v. Osborn, 147 Tenn., 385.

6. **BANKS AND BANKING.** Bank not required to see that funds properly checked out by administrator go to creditor of estate.

Bank is not required to see that funds properly checked out by administrator go to a creditor of the estate, unless knowing or having special reason to believe that he is misappropriating the fund, and this though check is drawn to a firm of which he is a member. (*Post, pp.* 585, 586.)

American Surety Co. v. Grace.

Case cited and distinguished: Fidelity & Guaranty Co. v. Bank, 127 Tenn., 720..

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.— HON. ISRAEL H. PERES, Chancellor.

McKELLAR, KYSER & ALLEN, for Surety Co.

M. C. KETCHUM, WALTER CHANDLER, HENRY CRAFT, A. J. CALHOUN and L. L. COLE, JR., for Grace, Bank, and others.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

Mrs. D. K. Grace died in Memphis May 15, 1921, intestate. Her husband and three minor children survived her. She owned real estate in that city, incumbered by lien to secure her notes for balance of the purchase amounting to $5,100. There was some interest due on these notes, and she owed certain taxes. These liabilities constituted all her indebtedness. In addition to her equity in said real estate, Mrs. Grace had $683 in cash and $13,500 of notes, secured by mortgage on Memphis real estate. Five of these notes were for $2,500 each, and one for $1,000.

. After the death of this lady, her surviving husband, D. K. Grace, qualified as administrator of her estate;

151 Tenn.—37.

complainant, the American Surety Company, becoming his surety.

Grace paid his wife's funeral expenses out of her money coming into his hands as administrator, but seems to have paid nothing else on her indebtedness, and had at the time the bill herein was filed dissipated all the assets of his wife's estate that came into his hands as her administrator.

Grace was a partner in a business enterprise at Memphis, known as the Purity Seed Company. This concern did banking with the North Memphis Savings Bank, and was indebted to that bank in the sum of $1,200. After qualifying as administrator, Grace brought one of the $2,500 mortgage notes formerly owned by his wife to the North Memphis Savings Bank and pledged this note to secure the $1,200 due by his firm to the bank, and to secure an additional loan of $1,200 thereupon made by the bank to this firm. Grace indorsed said note "D. K. Grace, Administrator of Helene Clark Grace." Later this $2,500 note, thus put up with the bank as collateral, was paid by its maker direct to the bank. Out of the proceeds of said note, the bank satisfied the two $1,200 notes of Grace's firm just referred to, and credited this firm with $100; the balance remaining.

A short while after the pledge of the aforesaid $2,500 note to the bank as just detailed, Grace borrowed $3,000 from the bank for his firm, and a little later borrowed another $1,000 for his firm. At the time these last two loans were negotiated, Grace had $11,000 mortgage notes remaining in his hands as administrator of his wife's

estate, and these notes were deposited with the bank as security for the two loans to Grace's firm aggregating $4,000.

Some time thereafter, acting under authority of an order of the probate court of Shelby county, Grace, as his wife's administrator, sold this $11,000 of notes to one Ennis for $8,900 cash. This transaction was concluded at the North Memphis Savings Bank and Ennis obtained the notes there and paid in the $8,900 to the bank. Out of this money paid in by Ennis, the bank satisfied its notes for $4,000 against the Purity Seed Company, and credited the balance, $4,900, to the account of D. K. Grace, administrator of Mrs. Helene Clark Grace. Grace appropriated the $4,900 to his own uses and has left entirely unpaid his wife's debts, as heretofore mentioned.

The original bill herein was filed by the American Surety Company, making the North Memphis Savings Bank, Grace, administrator, and individually, the minor children of Mrs. Helene Clark Grace, and some others, parties. The complainant recited in its bill the facts heretofore stated, and, as surety on Grace's bond as administrator, sought a decree against the bank, charging that institution with being a party to the misappropriation by Grace of the assets of his wife's estate. The minor defendants, through their guardian *ad litem,* filed a lengthy answer and cross-bill in which they asserted their claims, both against the surety company and the bank, and asked that the rights of all parties be determined by decree of the court. The bank answered and denied liability either to the complainant or to the cross-

complainant. Some other steps were taken which it is not necessary to mention.

The chancellor decreed in favor of the minor children against their father, the mother's administrator, and his surety, to the extent of the indebtedness of the mother's estate. He decreed in favor of the surety company against the bank to the extent that the bank had gotten the proceeds of the mortgage notes pledge with it by Grace, the administrator, with interest from the several dates upon which the bank received payments out of such proceeds. The recovery against the bank was ordered paid into court, to be credited on the children's judgment against the surety. The chancellor decreed, however, that the bank was not liable for any of the $4,900 deposited therein to the credit of Grace, administrator, which was disbursed by Grace on checks signed by him as administrator. From this decree, in its last particular, the surety company has appealed, and from the decree, in so far as liability was adjudged against it, the bank has appealed.

It is first assigned for error by the bank that the surety company is not entitled to maintain this bill; it not appearing that it has discharged the indebtedness of its principal of the creditors, the minor heirs. The bank relies on *Knaffl* v. *Knoxville Banking & Trust Co.*, 133 Tenn., 655, 182 S. W., 232, Ann. Cas., 1917C, 1181, and that line of cases. Passing over the exceptions to this general rule, the basis of the rule is that subrogation before payment would prejudice the creditor. Here the creditors by cross-bill acquiesce in the prayer of the surety for relief. It can make no difference to the bank,

if liable, whether it pays the surety or the creditors. All parties were before the court and the chancellor undertook to protect the rights of all in his decree. We think the bank has no standing to complain of the decree in this particular.

There is no dispute over the facts of the case. The bank knew that the mortgage notes pledged to it belonged to the estate of Mrs. Grace. The bank contends that, upon the death of Mrs. Grace, intestate, "the absolute title to the surplus of said notes, after reserving enough to pay the debts of $5,422, vested in D. K. Grace immediately . . . *jure mariti.*" The argument is that sufficient personalty came into the hands of Grace to pay all his wife's debts and still leave him with property received from this source greater in value than that pledged to the bank. So it is claimed that Grace was entitled to deal with this surplus property as he chose; that it was his and he had a right to pledge it.

Although there appears to be some controversy over the question, we think there is no doubt but that the personal estate of Mrs. Grace was primarily liable for all her debts, and that her heirs were entitled to have her administrator, out of assets coming into his hands, discharge the purchase-money notes due upon her real estate. *O'Conner* v. *O'Conner,* 88 Tenn., 76, 12 S. W., 447, 7 L. R. A., 33; *Whitmore* v. *Rascoe,* 112 Tenn., 621, 85 S. W., 860.

We think, therefore, that upon the death of Mrs. Grace, the $13,500 of mortgage notes belonging to her passed to her husband, charged with the payment of her indebtedness, and that this trust was impressed upon all of said assets until the indebtedness was paid.

There can be no contention, under our statutes, that an administrator may make distribution before providing for debts. Section 4172, Thompson's-Shannon's Code, in terms provides that—"The personal estate as to which any person dies intestate, after the payment of the debts and charges against the estate, shall be distributed as follows," etc.

While the husband does not take under the statute of distribution but by virtue of his marital right, the property so taken by him is no less charged with the wife's indebtedness than property in the hands of an administrator subject to distribution under the statute.

The Code provides that—"Every debtor's property, except such as may be specially exempt by law, is assets for the satisfaction of all his just debts." Thompson's-Shannon's Code, section 3985.

So that the wife's property is assets for the payment of her debts, just as any other debtor's, no matter how it devolves, or who takes it after the debts are paid.

In *Hamrico* v. *Laird,* 10 Yerg. (18 Tenn.), 222, it was said that upon the death of the wife her husband is entitled to retain her separate personalty, after payment of her debts, *jure, mariti.*

In *Hays* v. *Bright,* 11 Heisk. (58 Tenn.), 325, it was said: That the husband, "by virtue of his marital right, was the distributee entitled to the funds after the debts and costs of administration should be satisfied."

In *Jones* v. *Walkup,* 5 Sneed (37 Tenn.), 135, it was said: "But her choses in action, not reduced to possession in her lifetime, when they come to his [the husband's] hands after her death as administrator, would

be assets, and subject to the payment of her antenuptial debts.''

It makes no difference whether the husband qualifies as administrator and takes his wife's personalty in that capacity or asserts his marital rights without administration. If the wife was a debtor, her property is all primarily liable for her debts, and the claims of her creditors are a prior charge thereupon. However, the husband takes the property, he takes it burdened with this trust, and the trust covers all of it until the debts are paid. Such a holding is the more necessary since the Married Woman's Emancipation Statutes, and the capacity of married women to create debts has been enlarged.

Inasmuch as the husband here took these choses in action, formerly the property of his wife, charged with the payment of his wife's debts, he was not entitled to appropriate to himself any part of this personalty until all of the wife's debts were paid. Neither could he confer upon a purchaser with notice title to any part of this property that would prevail over the claims of her unsatisfied creditors.

As it is sometimes phrased, the husband took an equitable estate in this personalty of his wife, charged with the payment of her debts. It is well settled that the purchaser of an equitable title from a trustee is subject to the same equities as his vendor. Such a purchaser must abide by the case of the person from whom he buys. *Pinson* v. *Ivey*, 1 Yerg. (9 Tenn.), 297; *Craig* v. *Leiper*, 2 Yerg. (10 Tenn.), 193, 24 Am. Dec., 479; *University* v. *Cambreling*, 6 Yerg. (14 Tenn.), 79; *Williams*

v. *Love,* 2 Head (39 Tenn.), 80, 73 Am. Dec., 191; *Young* v. *Adkins,* 4 Heisk, (51 Tenn.), 529.

As otherwise stated, the bank, taking this trust fund with notice, became a cotrustee, *ex delicto,* with the husband, and jointly liable for the assets converted. *Woodward* v. *Bird,* 105 Tenn., 671, 59 S. W., 143; *Ford* v. *Brown,* 114 Tenn., 467, 88 S. W., 1036, 1 L. R. A. (N. S.), 188.

Not only were the creditors of his wife beneficiaries of the trust impressed upon the personal assets of her estate, but these minor children, her heirs, were likewise beneficiaries of this trust and entitled, for the exoneration of the realty, to a proper application of the trust fund. *O'Conner* v. *O'Conner,* supra, *Whitmore* v. *Rascoe,* supra.

Counsel for the bank relies on the rule noticed in *Bragg* v. *Osborn,* 147 Tenn., 385, 248 S. W., 20: ''That, where a trustee blends in a bank account his own money with a beneficiary's, from which account the trustee subsequently withdraws funds, the withdrawals will be presumed to be the trustee's own funds, which he had a right to withdraw, and the balance will be presumed to be the beneficiary's funds, which the trustee had no right to use.''

It is argued that the notes withdrawn from the assets of his wife's estate by Grace and pledged to the bank by the latter; that is, the first withdrawals, should be treated as the husband's notes which he had a right to appropriate under this doctrine.

As noted in *Bragg* v. *Osborn,* supra, the rule stated is but a fiction of law. It was invented to aid in the pur-

suit and recovery of a trust fund. It is employed to preserve a trust fund. It would destroy the whole purpose of this fiction if it were employed to obstruct a beneficiary seeking to follow a trust fund, and to protect an unfaithful trustee or a party to the trustee's misappropriation.

The surety company insists that the chancellor erred in failing to hold the bank liable for $1,325 which Grace, administrator, drew out of his account on checks payable to the Purity Seed Company. It is contended that the bank had actual knowledge of the fact that Grece was a member of this firm, and that said withdrawals were misappropriations of the trust fund.

We think there was no error in this action of the chancellor. It would place too heavy a burden upon a bank to require it to keep watch on the account of a trustee, and to look after the distribution of funds deposited to his credit. Under ordinary circumstances, the bank would not be at liberty to refuse payment of the trustee's checks properly drawn in favor of third persons.

In *Fidelity & Guaranty Co.* v. *Bank,* 127 Tenn., 720, 157 S. W., 414, this court said:

"We do not wish to be understood as holding that a bank is in general liable for the acts of trustees who deposit money with them. If the money is deposited to the trustee's credit as such, and his checks are drawn on this fund in his character of trustee, or guardian, as the case may be, the bank need look no further. It is not responsible for his administration of the fund, unless it knows, or in some special transaction has good reason to believe, that he is misappropriating the fund.

It would be out of all reason to impose such responsibility on banks.''

Some other questions are made in the case which we have considered but do not think they require discussion.

There is no error in the decree of the chancellor, and the same will be affirmed, and the cause remanded for further proceedings. Costs below will be taxed by the chancellor. Costs of this court will be paid, two-thirds by the North Memphis Savings Bank, and one-third by the American Surety Company.