## HUDSON v. COMMISSIONER OF INTERNAL REVENUE.
### No. 7495.

Circuit Court of Appeals, Sixth Circuit.
Nov. 12, 1938.

HAMILTON, Circuit Judge, dissenting.

———◆———

Hillsman Taylor, of Memphis, Tenn.
(Hillsman Taylor, of Memphis, Tenn., W.

H. Holmes, of Little Rock, Ark., and F. E. Hagler, of Memphis, Tenn., on the brief), for petitioner.

Morton K. Rothschild, of Washington, D. C. (James W. Morris, Sewall Key, and Morton K. Rothschild, all of Washington, D. C., on the brief), for respondent.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

Petition to review an order of the Board of Tax Appeals determining a deficiency in income tax of $5,127.99 for the year 1929.[1] 34 B.T.A. 155.

The facts, as stipulated, and found by the Board, are as follows:

Charles Hudson, deceased, was the president and principal stockholder of the Hudson & Dugger Company, a Tennessee corporation, owning 6731¼ shares of the capital stock, the remaining shares, 768¾, being owned by his son, Galvin Hudson. Petitioner is the widow of Charles Hudson, and also is trustee for Marie Hudson, their daughter. At the death of Charles Hudson, on December 24, 1924, Galvin, Kate and Marie Hudson shared equally in his estate.

Charles Hudson for a number of years prior to his death had withdrawn from the corporation various sums of money which were charged to his personal account. At the time of his death his account was in debt to the corporation in the amount of $43,910.19. Charles Hudson died intestate, and Galvin Hudson was appointed administrator.

As administrator, Galvin Hudson withdrew from the corporation sufficient funds to pay funeral expenses ·and administration fees, and to wind up the estate. These amounts were charged on the books of the corporation to the account of Galvin Hudson, administrator, and after being reduced by certain credits which need not be itemized, the balance due the corporation was $58,768.81. In 1926, by order of the Probate Court of Shelby County, Tennessee, the administrator distributed the capital stock of the corporation belonging to the estate, one-third each to petitioner individually, and to her as trustee for Marie Hudson, and to himself individually.

During the period from January 1, 1925, to March 15, 1929, petitioner's withdrawals from the corporation left a balance due of $16,271.96. During practically the same period Marie Hudson withdrew certain amounts which left her aggregate debit balance as of March 15, 1929, $2,089.64. Upon March 1, 1929, as shown by the corporate minutes, the directors took up the question of the debit balances of the stockholders, and adopted the following resolution:

"Be It Resolved that the overdrafts shown on the accounts of Charles Hudson, Galvin Hudson, Administrator, Mrs. Charles Hudson and Miss Marie Hudson be cleared out of the assets of the Hudson and Dugger Company by charging them and each of them to surplus, it being the sense of this resolution and so understood by all that the accounts above set out are not being forgiven and that Hudson and Dugger Company still owns its equity therein; that at such time as may be convenient and appropriate proper settlement will be made to the company by the parties of such account."

The various overdrafts were charged on the books of the Hudson & Dugger Company to undivided profits, and the accounts of the debtors were credited with amounts equal to the debt balances shown in their respective accounts. Petitioner does not contend that the corporate surplus was not at that time sufficient for the payment of dividends in the amounts of the overdraft. Neither does it appear that any of the items represented in the overdrafts was returned for taxation by the individual drawers in the respective years when the withdrawals were made. None of the amounts was taken as a deduction for income tax purposes by either the corporation or by the estate. In 1931, at a meeting of the stockholders, the president of the corporation suggested, since there was controversy between the stockholders and the corporation, and also with the federal government with reference to these accounts, that stock in the company be surrendered by each of the debtors, and canceled. The corporation approved this suggestion, and in 1932, such a surrender was actually made by petitioner, both in her own right and as trustee for her daughter.

In determining deficiencies against peti-

---

[1] Deficiencies for the same year were determined against Kate Hudson, trustee for Marie Hudson, and against Galvin Hudson, respectively. By agreement the decision in this case will bind the other two parties.

tioner and Galvin Hudson and Marie Hudson, the Commissioner decided that each had received a dividend of $34,226.33, or one-third of $102.679.04, the latter sum being the aggregate of the debts of Charles Hudson and Galvin Hudson, administrator, owing to the corporation. He further determined that the sum of $16,271.96 credited to petitioner's account constituted a dividend to her, and that $2,089.64 credited to the account of Marie Hudson was a dividend to her. The Board of Tax Appeals sustained the Commissioner.

Petitioner contends:

1. That no dividend was declared by the corporation, and that the amount of the withdrawals does not constitute income.

2. That claims against the administrator and against Charles Hudson, when charged off, are not dividends to distributees of the estate; and

3. That the claim of the corporation against the estate had been outlawed at the time the account was charged off, and that therefore the amount of the debts, even if they were canceled, was not a dividend to the distributees. We do not consider this contention, because that question was not raised before the Board of Tax Appeals nor decided by it.

The main question presented is whether the action taken by the corporation in its resolution of March 1, 1929, created a taxable dividend within the definition in § 115(a) of the Revenue Act of 1928, 45 Stat. 791, 26 U.S.C.A. § 115(a), which provides that "The term 'dividend' when used in this title [chapter] * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913."

Petitioner urges that as the corporation's resolution states that the debts are not to be forgiven, the charge-off did not constitute a dividend, especially as the debts are alleged to have been paid by transferring to the corporation some of the shares of capital stock which petitioner inherited. The fallacy of this argument is apparent from the nature of the acts done and the effects thereof.

This court has held in Cohen v. Commissioner, 6 Cir., 77 F.2d 184 that cash withdrawals from a corporation made by

its stockholders constitute dividends in the taxable year during which corporate action was taken canceling or charging off such accounts against surplus. The resolution of March 1, 1929, authorized just such action as that taken in the Cohen Case. The accounts of the following persons were actually credited, in accordance with that action, with the following amounts:

Mrs. Charles Hudson.......... $16,271.96
Marie Hudson ................ 2,089.64
Charles Hudson .............. 43,910.19
Galvin Hudson, administrator.. 58,768.81

But the resolution introduced an element of ambiguity by specifying that the debts were not being forgiven. So far as we know, accounting practice provides no way in which items charged against surplus may be carried on the books as "not being forgiven." We are aware that certain decisions hold that book entries, while of evidential value, are not determinative of tax liability. Cf. Helvering v. Midland Mut. Life Ins. Co., 300 U.S. 216, 223, 57 S.Ct. 423, 81 L.Ed. 612, 108 A.L.R. 436. But in this case the book entries reflect the acts done by the corporation. The individuals were in fact given credit for payment of the debts, and they were charged off to surplus. The book entries clarify the vague and indefinite reservation of the resolution. The burden of proof was on the petitioner to show that the Commissioner erred in his determination. Cohen v. Commissioner, supra. This burden it did not sustain. While in the Cohen Case the debt was charged off by formal resolution, in the instant case the same thing was accomplished by resolution and by book entries made in conformity to the resolution. Cf. Wiese v. Commissioner, 8 Cir., 93 F.2d 921. We conclude that the principle announced in Cohen v. Commissioner, that there was a distribution of profits, and that income accrued at that time, controls.

The release to the corporation by petitioner of sufficient shares of stock at $100 par value to pay for her one-third of the estate debts does not affect the conclusion. The record does not show that these shares when released had any substantial value. The transaction resulted in no loss to petitioner, and amounted to no more than a minor re-allotment of shares among the shareholders. The corporation was a closed one, owned by three members of one

family. The stock turned in was canceled and the book value of the outstanding shares was changed. In reality the so-called repayment of the withdrawals merely resulted in the fact that a fewer number of shares existed, but they were held in practically the same proportions as previously, and represented the same quantum of net worth.

The second principal question is whether the Commissioner was correct in his determination that one-third of the $102,679.04, constituting the aggregate sum of the deceased's withdrawals, and the estate expenses, represents income to the petitioner. Up to March 1, 1929, the amount had been carried on the books of the corporation as an asset in the form of accounts receivable.

Under § 8336 of the Code of Tennessee 1932, petitioner was personally obligated for debts of the estate, in proportion to the value of her distributive share. American Surety Co. v. Grace, 151 Tenn. 575, 271 S.W. 739. The resolution of March 1, 1929, was the first corporate action taken with regard to the withdrawals. It provided for charging off the debts to undivided profits. When the accounts were credited with the amount of the debts and the charge-off was made in accordance with the resolution, the action was tantamount to cancellation. Wiese v. Commissioner, supra. As to petitioner, the charge-off constituted either an increase in her inherited estate or the relinquishment of a lien on her inherited property.

We conclude that petitioner received in 1929, as dividends, one-third of the sum of $102,679.04. The additional withdrawals of $16,271.96 credited to petitioner's account must of course, in view of the above considerations and in view of our holding in Cohen v. Commissioner, supra, be regarded as income in 1929.

The order of the Board of Tax Appeals is affirmed.

HAMILTON, Circuit Judge (dissenting).

I am unable to concur in the opinion of the Court.

On March 1, 1929, the directors of the corporation, at the suggestion of the company's accountant, in order to avoid an overstatement of the company's balance sheet assets, adopted a resolution providing for the charging of all the debit balances of the Hudson stockholders to surplus, the material part of which is as follows: "Be it resolved that the overdrafts shown on the accounts of Charles Hudson, Galvin Hudson, Administrator, Mrs. Charles Hudson and Miss Marie Hudson be cleared out of the assets of the Hudson and Dugger Company by charging them and each of them to surplus, it being the sense of this resolution and so understood by all that the accounts above set out are not being forgiven and that Hudson and Dugger Company still owns its equity therein; that at such time as may be convenient and appropriate proper settlement will be made to the Company by the parties of such account."

On March 15, 1929, there was charged to surplus and credited to the petitioner by journal entries $16,271.96; Marie Hudson, $2,089.64; and on May 31, 1929, Charles Hudson, $43,910.10; and Galvin Hudson, administrator, $58,768.81. Galvin Hudson reported in his individual income tax return for 1925, $10,000 administrator's fees, withdrawn from the corporation.

In 1929, the Hudsons owned no property except the stock of the Hudson & Dugger Company and the indebtedness of each of them to the corporation could have been collected only by its subjection.

In September, 1931, after a controversy had arisen between the Hudsons and the Internal Revenue Bureau, concerning their income taxes for the calendar year 1929, the stockholders of the company declared by resolution that there was no understanding between the company and the Hudsons in 1929, that they or any one of them should be relieved of any indebtedness to it by reason of their withdrawals, or those of their intestate, Charles Hudson. They then agreed with the other stockholders of the company that the $43,-910.19 due by Charles Hudson at the date of his death and the $58,768.81 due by Galvin Hudson, Administrator, be settled by his surrendering to the company 340.27 shares of its capital stock par value $100 per share, by the petitioner surrendering 343.26 shares and surrendering as trustee of Marie Hudson, 343.26 shares.

The president of the company was authorized to negotiate further with the petitioner, individually, and as trustee for a settlement of their indebtedness to the company of $16,271.96 and $2,089.64 respectively and on March 13, 1932, petition-

er settled these debts by surrendering to the company 162.72 shares, and 20.90 shares respectively. There was no formal declaration of a dividend by the corporation.

The Commissioner of Internal Revenue, basing his decision on the resolution of the directors and the books of the company, found that Galvin Hudson, the petitioner, individually, and as trustee for Marie Hudson, each received a taxable dividend for the year 1929 of $34,226.33 by reason of the receipt by each of them in 1926 of one-third of the capital stock of the corporation belonging to their intestate, and that their liability arose from the charge-off of the indebtedness to the corporation of Charles Hudson and his administrator, Galvin Hudson. He further found that petitioner had in addition received a taxable dividend of $16,271.96, the amount of her indebtedness charged-off in 1929 and Marie Hudson a dividend of $2,089.64. The Board of Tax Appeals sustained the Commissioner.

Section 115(a) of the Revenue Act of 1928, 26 U.S.C.A. § 115(a), makes taxable as a dividend any distribution by a corporation to its stockholders, in money or other property, out of earnings or profits accumulated after February 28, 1913. This statute taxes a distribution in money or its equivalent even though to a single stockholder. Lincoln National Bank, Executor, v. Burnet, Commissioner, 61 App. D.C. 54, 63 F.2d 131.

Dividends need not be formally declared. Chattanooga Savings Bank v. Brewer, 6 Cir., 17 F.2d 79, and the cancellation of the indebtedness of a stockholder may result in the payment of a dividend. Moses Cohen v. Commissioner of Internal Revenue, 6 Cir., 77 F.2d 184.

Under the laws of Tennessee, the heirs or devisees become personally responsible for decedent's debts, to the extent of the value of the estate received. American Surety Company v. Grace, 151 Tenn. 575, 271 S.W. 739.

In December, 1926, when the Hudsons accepted the capital stock of the Hudson & Dugger Company distributed out of the estate of Charles Hudson, it passed to them charged with the payment of his indebtedness and the expenses of the administration of his estate which trust was impressed upon all of the stock until these obligations were discharged.

If the corporate resolution of March 1st and the subsequent debiting of surplus and crediting of the accounts of the Hudson stockholders resulted in cancelling their indebtedness to the corporation, each of them received a taxable dividend. If the effect of the resolution was to postpone the payment of the debts, no dividend was received. The resolution is not free from ambiguity and, in considering it, we must so reconcile conflicts as to give effect to all of it.

It was stated in the resolution that the purpose of the charge-off was because "there appears to be little probability of the Company realizing on these accounts for at least some time to come" and "that there may be no overstatement of the Company's assets in its balance sheet." It was also set out that these so-called "assets" are to be cleared out of the Company "by charging them, and each of them, to surplus." This was followed by a statement that it was not to be understood by any of the parties "that the accounts above set out are being forgiven and that Hudson & Dugger still owns its equity therein." It was further stated "that at such time as may be convenient and appropriate, proper settlement will be made to the Company by the parties of such account."

The phrase "convenient and appropriate" means suitable or well adapted to easy action or performance. It is not synonymous with forgiveness or cancellation.

In the case of Newsam v. Finch, 25 Barb., N.Y., 175, 177, where part payment of a note was made before it was legally demandable, in consideration of the time for the payment of the balance being extended until convenient to the maker to pay it, the court said: "The effect of that agreement was, to postpone the time for the payment of the balance after the note should become due by its terms, for such a period as under all the circumstances of the case should be reasonable."

In the case of Black v. Bachelder, 120 Mass. 171, the appellees became indebted to the appellant under an advertising contract and the creditor agreed to postpone the payment by providing in the contract "payable as convenient." The court said this phrase "can only mean that some indulgence as to the length of credit was to be allowed to the debtors."

In the case of Samuels v. Larrimore, 11 Cal.App. 337, 104 P. 1001, the court said

one who borrows money "to be repaid 'when convenient or when business picked up,' [is] bound to repay within a reasonable time, and [is] not entitled to hold the money indefinitely at his election." [Page 1002.]

In Howes' Ex'rs v. Woodruff, 21 Wend., N.Y., 640, 642, the court, in construing an agreement to pay a certain sum with interest "whenever it is convenient to make a final settlement," said: "The legal effect of such a stipulation is, I think, that the act shall be done within a reasonable time. It cannot mean that the thing shall be done on the demand of the party, for then he might demand immediately, and before a proper time had elapsed. 'Convenient,' as here used must mean such a time for doing the act, as, under all the circumstances of the case, should be reasonable."

A contract or corporate resolution must be construed in the light of its subject matter and the surrounding circumstances. The acts of the parties thereto may be scrutinized in determining the intent, if the language or terms of the instrument are ambiguous or uncertain. What one intends is best determined by what he does.

In 1931, the Hudson stockholders surrendered a part of their stock in the Company and were unequivocably relieved of their indebtedness to it, and not until that time was there a final and complete settlement. The entries on the books of the corporation do not agree with the directors' resolution. Surplus was charged and the accounts of the stockholders credited, which balanced the accounts.

Correct accounting in accordance with the resolution would have required a charge against surplus and a credit to reserve for the Hudson overdrafts. However, book entries, though evidential, are not determinative of tax liability. The minute books of the corporation setting out the resolution of the Board of Directors reflect more clearly the true nature of the transaction than the bookkeeping entries. The action of the Board of Directors is more authentic and carries greater weight as evidence. Compare Helvering v. Midland Mutual Life Insurance Company, 300 U.S. 216, 227, 57 S.Ct. 423, 81 L.Ed. 612, 108 A.L.R. 436; Eaton v. English & Mersick Company, 2 Cir., 7 F.2d 54; Taplin v. Commissioner, 6 Cir., 41 F.2d 454; Doyle v. Mitchell Bros. Co., 247 U.S. 179, 189, 38 S.Ct. 467, 62 L.Ed. 1054.

Income tax is laid upon income, not capital. When receipts come to a taxpayer in the ordinary course of business, or from dealing in property, they bear no label clearly identifying them as income. Consideration of the substance rather than the form out of which the alleged taxable transaction arises, is the basic rule to be applied. The Government should not distort the things men do in order to collect taxes and individuals should not conceal or disguise their business transactions or dealings in property in order to prevent their imposition. Credits, as well as cash, may give rise to taxable income. A credit to a stockholder in order to constitute a dividend, must have finality and be for a definite amount, unequivocal and subject to no substantial contingency. When the credits to the Hudson stockholders and charges to the company's surplus in 1929 are integrated with the resolution of the Board of Directors, the alleged dividends lack finality and are contingent.

The decision of the Board of Tax Appeals should be reversed.