MONTEVERDE v. CHRISTIE et al.—134 S. W. (2d), 905.

Western Section. March 24, 1939.

Petition for Certiorari denied by Supreme Court, December 16, 1939.

L. J. Monteverde, of Memphis, for plaintiffs in error.

George J. Coleman and Armstrong, McCadden, Allen, Braden & Goodman, all of Memphis, for defendant in error.

ANDERSON, J. This proceeding was begun by a petition filed in the Probate Court of Shelby County by L. J. Monteverde, as special Guardian and also as next friend of Mary Jo Christie, a minor, against Mrs. Charlotte Christie, the general Guardian and mother of said minor, and the surety on her guardian bond, the New York Casualty Company, for the alleged purpose of having said Guardian and her surety "account to this court" for $8,000 of the guardianship funds alleged to have been wrongfully and illegally invested, and also to recover the further sum of $940.80 representing certain taxes paid out of the guardianship funds on real estate acquired by the Guardian as a result of said illegal investments. After motions to dismiss challenging the jurisdiction of the court had been overruled, the Guardian and her surety filed separate answers and the issues thus made were tried on oral evidence introduced before the Probate Judge without a written stipulation that the case should be so tried. The result was a decree granting the relief sought. The regular

Guardian was also removed and another appointed in her place. She and the surety appealed in error.

In the view we have of the case, the determinative question is whether the Probate Court of Shelby County has jurisdiction to try and determine issues such as those presented and render the decree which it did render. The disposition of this question requires a more detailed statement of the circumstances that gave rise to the controversy, the nature of the proceedings, and the relief granted.

On March 14, 1930, the defendant, Mrs. Charlotte Christie, was appointed the general Guardian of her daughter, Mary Jo Christie. She qualified and gave the defendant, New York Casualty Company, as a surety on her guardian bond, which is in the penalty of $20,000. There came into her hands $10,000 belonging to her ward. She desired to invest these funds and sought advice of the Trust Officer of the Union Planters National Bank & Trust Company who introduced her to the officers of the Union & Planters Company, an affiliate of the former company. Advised of her desire, these officers selected, and offered to her for investment of the funds, certain securities then owned by it. Among these was one interest bearing note in the principal sum of $4,000, executed by one White and wife and secured by a first mortgage deed of trust on improved real estate in Memphis. Another was a note of like amount executed by one Wade and wife and secured in a like manner. The original loans to White and Wade, respectively, had been made by the Union Planters Title Guaranty Company, also an affiliate of the Union Planters National Bank & Trust Company. Before the transaction was closed the Trust Officer of the bank, acting for the Guardian, filed a petition in the Probate Court describing the proposed investment, and on the same day an order was made approving and authorizing the proposed deal. The transaction was thereupon consummated by the delivery of the notes or bonds to the Guardian by the Union & Planters Company and her payment therefor to that company out of the guardianship funds.

On April 6, 1932, the Guardian filed her first biennial settlement covering the period from March 27, 1930, to March 27, 1932, which showed a disbursement of $9,800 in payment of the purchase price of first mortgage bonds which included the notes here involved. This settlement was reported upon by the clerk and confirmed by order of the court entered on April 27, 1932. At this time there had been no default with respect to the notes here in question.

In March, 1933, defaults occurred in both investments, and on the 28th of August, 1933, this situation was brought to the attention of the court by a verified petition filed by the general Guardian. On the same day, after a hearing, an order designated as an ''Order for instructions to Guardian'' was entered, in which, with respect to both investments, it was adjudged to be to the best interest of the ward that the trust deeds securing the notes held by the Guardian

be foreclosed. The Guardian was accordingly ordered and directed to cause the foreclosure of the trust deeds and in the protection of the investments was authorized to bid for the property at the foreclosure sale up to the amount of the secured indebtedness "in the name of Charlotte S. Christie, Guardian of Mary Jo Christie." Pursuant to this authorization and direction, the sales were had and the properties were purchased by the Guardian by way of protection of the investments. On April 5, 1934, the Guardian filed her second biennial settlement for the period from March 22, 1932, to February 23, 1934. This settlement was reported upon by the clerk and confirmed in all respects by the court on June 5, 1934, "except as to investments."

On February 8, 1938, the Guardian filed a verified petition in the Probate Court, alleging that she had been advised that there was serious doubt as to the legality of the investments in the Wade and White notes or bonds aggregating $8,000 in which defaults had occurred and on which foreclosure proceedings had been had in compliance with the order of the court of August 28, 1933. It was further averred that the petitioner was advised "that there are or may arise material conflicts between her own interests and those of her said ward in the adjustment of any legal wrongdoing on her part in making said investments in the manner and form stated." She prayed that a guardian ad litem be appointed for the special purpose of protecting the rights and interests of the ward in these particular investments. Upon consideration of this petition the court appointed L. J. Monteverde, Esq. as special Guardian with the power to take such steps as might be necessary to effectuate that end. He filed the petition in the instant case on March 3, 1938, setting up the facts with respect to the original investments, and subsequent foreclosure and purchase of the properties by the general Guardian, and further charged that the general Guardian had paid out of the guardianship fund the sum of $940 covering certain delinquent taxes on the real estate which she had purchased.

The petition prayed that the regular Guardian and her surety be made to account for said investment amounting to $8,000 with interest thereon from March 31, 1930, and for the sum of $940 with interest thereon from the 11th day of July, 1935, and "that any and all proper or necessary orders, proceedings and act be taken and had herein to effect said accounting" and for general relief. On the presentation of this petition, an order was made peremptorily directing the Guardian and her surety "to render a full and correct account to this court in the matter of the aforementioned investments and the present condition of the said ward's estate pertaining thereto." In the same order it was directed that notice by service of a copy of same be given the Guardian and her surety directing them to make the account as ordered within ten days. To this peti-

tion written motions to dismiss were filed by the Guardian and her surety challenging the jurisdiction of the court and setting forth certain other grounds of defense not necessary to be mentioned at this point. Both motions were denied and separate answers were thereupon filed by the Guardian and her surety, again setting up, among other things, as grounds for dismissal of the petition, that the court had no jurisdiction to grant the relief sought. A trial on oral evidence was had and resulted in a final decree which, from a jurisdictional standpoint, indicates very clearly the scope of the jurisdiction assumed. It was therein adjudged:

"(1) That the Wade and White investments were wrongful and illegal—because they were not loans originated and made by the Guardian, but were purchases made by the Guardian of existing mortgages which had been made previously by the Union Planters Title Guaranty Company and by it sold to Union and Planters Company, and thereafter selected, tendered and sold by the latter to the Guardian as investments for the funds of the minor.

"(2) That the order of the Court approving and authorizing such investments in existing mortgages and the subsequent orders approving the same and instructing the Guardian as to the steps to be taken in the protection thereof were void.

"(3) That the minor have and recover judgment against Mrs. Christie and her Surety for the principal sum of $8000.00 (the amount expended for said investments) with interest at 6% per annum from the date the same were purchased by the Guardian, March 31, 1930, less all sums received by the Guardian therefrom either by way of interest or rentals.

"(4) That Mrs. Christie, mother of the minor, be, and by the decree was removed as Guardian; and that she file final settlement of her accounts with the Clerk, charging herself with the sum of $8,000.00, with interest less credits as aforesaid; and that Wm. Bartels be and was thereby appointed Guardian in her place and stead; and that Mrs. Christie, as such removed Guardian, account to such successor within twenty days after his qualification.

"(5) That as the wrongful investments had been made by Mrs. Christie on advice of counsel, she be allowed as further credit, reasonable compensation for her services, which was fixed and allowed in the sum of $400.00; and that the unpaid premiums on her Guardian's bond for the years 1936-1938, inclusive, on the basis of the penalty of $2,000.00 as theretofore reduced by order of Court, be allowed as a proper charge against the estate and the same was ordered paid from the guardianship funds.

"(6) That in the event the amount due from Mrs. Christie as Guardian for said wrongful investments is not paid, and if all other guardianship funds are not delivered by Mrs. Christie as Guar-

dian within twenty days after the qualification of her successor, execution should issue against her and her Surety.

"(7) That if said judgment against Mrs. Christie is not paid and discharged by her and is paid and discharged by the Surety, then upon such payment by the Surety, the investments for which said judgment constitutes a restoration, should be delivered over to said Surety as security to it against ultimate loss and that said Surety be subrogated to all of the rights of the minor, both against said property and against Mrs. Christie as Guardian and all other persons who participated with her in connection with said wrongful investments."

As further indicating the nature of the questions comprehended by the proceeding and presented to the Probate Court, it was contended by the surety that if the investment by purchase of an existing mortgage be held void as beyond the jurisdiction and power of the Probate Court to approve prior to the Act of 1931, then such investments were expressly authorized and became legal investments on July 1, 1931, the effective date of chapter 100, Public Acts of 1931, without prior approval or subsequent confirmation of the court; and in no event would the guardian be liable for loss on said investments which (regardless of the question of their original validity) became legal investments by a subsequent legislative enactment and before the depreciation occurred. Other questions of law and fact were ably and vigorously presented, but from what has been said the nature of the proceeding has been sufficiently indicated for present purposes.

The determinative question arises upon a contention made in the brief of the surety in the following language:

"If the acts of the Guardian here, as contended by petitioner Monteverde, constituted an unlawful diversion of guardianship funds (contrary to the findings of the Probate Court in all of its previous proceedings and orders) the proceeding for recovery thereof against the Guardian and Surety, by petition in the guardianship cause, was beyond the boundaries of the jurisdiction conferred upon the Probate Court with respect of the settlements of a Guardian and involved litigated and contested questions of fact, accounting and offset, and the surcharging and falsifying of acts and settlements made and confirmed by this very Court, determinable only by a Court of Chancery in a plenary proceeding, affording the defendants a tribunal not only competent for the presentation of all of their defenses, but also of such rights of exoneration or subrogation as they might have in following and recovering the converted fund from all parties inducing or participating in such conversion and receiving said trust funds with knowledge of their character."

Since the recent decision in the case of Humphries v. Manhattan Savings Bank & Trust Company, 174 Tenn., 17, 122 S. W. (2d), 446, it is no longer an open question that the purchase by the

Guardian of the notes here involved was illegal and constituted an unlawful diversion of the ward's funds, and that it was beyond the power of the Probate Court of Shelby County to sanction such an unauthorized investment. The attempted approval thereof afforded no protection either to the Guardian or any other participant in the illegal transaction such as the seller of the security. Woodard v. Bird, 105 Tenn., 671, 59 S. W., 143; Freeman v. Citizen's National Bank, 167 Tenn., 399, 70 S. W. (2d), 25.

The Court in the Humphries case considered at length the extent of the jurisdiction of the Probate Court of Shelby County with respect to guardianship matters. It was there pointed out that while there was conferred upon that Court concurrent jurisdiction with the Chancery Court of certain matters (See: England v. Pearson, 84 Tenn., 443, 1 S. W., 42), that this did not extend to jurisdiction over minors and their estates. With respect to these matters and apart from the effect of Private Acts of 1935, Ch. 179, hereinafter discussed, the Probate Court of Shelby County exercises jurisdiction identical with that exercised by the county courts of other counties of the state; its powers are the same as those conferred by law on those courts and the procedure in one is applicable to the other. Roy v. Giles, 72 Tenn., 535; Chester v. Turner, 153 Tenn., 451, 467, 284 S. W., 365.

In Roy v. Giles, supra, it was held that while the county courts of the state, and hence the Probate Court of Shelby County, have power to bring guardians to settlement in a summary proceeding, such courts have no jurisdiction of a bill to surcharge and falsify the final settlement of a guardian. See also: Henrickson v. Mayton, 16 Pickle, 80; Pickens v. Bivens, 4 Heisk. 229.

In the last mentioned case, the question for determination was whether the county court had jurisdiction to render judgment against a guardian and to award execution for the amount found due from him on confirmation of his settlement. In answering this question in the negative, after pointing out that under applicable statutory provisions the county courts have power to take all proper measures to bring delinquent guardians to a settlement of their accounts, that is, the ascertainment of the state of their accounts and the amount for which they are responsible to their wards, the Court said:

"The statute has conferred no further jurisdiction than the settlement of the accounts. When this is accomplished, and the state of the accounts ascertained, the jurisdiction is exhausted.

"No power is conferred to render judgment or award execution. The settlement is valid, and may be used as prima facie evidence against the guardian in an action on his bond, or in a suit in chancery for the settlement of his trust. But the fact that the settlement is not conclusive on the parties shows that it could not be the basis of a judgment."

It has been a number of times held that the county courts are without jurisdiction to pass on complicated accounts, questions of set-off, and the like, or determine other controverted facts arising in the course of the administration of estates by executors or administrators. Chester v. Turner, 153 Tenn., 451, 284 S. W., 365, and cases cited; In re Hodges Estate, 20 Tenn. App., 411, 99 S. W. (2d), 561.

In a very able brief, the special Guardian insists that this proceeding is simply one wherein it is sought to require a guardian to account for the proper investment of the funds of the ward; that since the Probate Court has jurisdiction to make settlements with guardians and all matters pertaining to the estate of the ward it is vested with all the authority required to effect this purpose. The language of the petition as well as that of the decree in some respects seems to lend color to the theory that the proceeding was one to require a final settlement by the guardian, and it appears to have started out as a summary proceeding to accomplish this end but, as it wound up, it became in form and in substance a proceeding in the nature of a plenary suit to open the settlements theretofore made by the Guardian and approved by the court, and to hold her and her surety liable for the unlawful diversion of the funds of the ward. There is nothing in the act defining the powers of the Probate Court of Shelby County. as construed by the cases hereinabove cited empowering it to entertain any such proceeding or grant the relief it decreed.

It is very earnestly insisted, however, by the learned special Guardian that while this may formerly have been true with respect to the jurisdiction of probate courts, it is no longer so since the passage of chapter 179 of the Private Acts of 1935. This act is in the form of an amendment to the act creating the Probate Court of Shelby County, adding to section 2 of chapter 86 of the Acts of 1870 (Shannon's 1917 Code, section 387) the following:

"After the settlement of a guardian's account, the Court may compel the guardian to pay into the office of the Clerk the balance found against him, and may upon motion of the Clerk or any interested party, after twenty days notice to the guardian, award *summarily* an execution against such guardian and his sureties for the amount of said balance as in case of a judgment at law; and when any specific thing is to be done, the Probate Court may compel the guardian, by an order, to perform it, and by process of contempt in case of refusal."

This is in substance the same as the statutory provision with respect to the settlements of administrators contained in the Code of 1858, section 2307, and brought forward into the Code of 1932 at section 8256. With respect to the original of this statutory provision, now contained in the latter section, the Court in Bowers v. Lester, 2 Heisk., 456 said:

"Under this statute, the only power the County Court has, is simp-

ly to order the payment of the legacy or distributive share readily ascertained without complication or plausible dispute, and without issue or litigation.

"It was not intended that the executor or administrator should answer, with a view to litigate and contest. The petition is only to perform the office of a notice in a summary proceeding, the statute expressly declaring that the proceeding shall be summarily heard, and determined as soon as practicable."

See also: In re Hodge's Estate, supra, and cases cited.

We think the same thing is true with respect to chapter 179 of the Private Acts of 1935. It is too clear for elaboration that this amendatory act did not contemplate or authorize a proceeding such as that here involved. This proceeding was in reality in the nature of an action in tort for the wrongful diversion by the Guardian of the trust funds in her hands and the relief granted by the Probate Judge, whatever may have been the language of the decree, was in reality based on the wrongful act. Cf: United States Fidelity & Guaranty Co. v. Peoples Bank, 127 Tenn., 720, 723, 157 S. W., 414; American Surety Co. v. Grace, 151 Tenn., 575, 271 S. W., 739; Freeman v. Citizens' Nat. Bank, 167 Tenn., 399, 410, 411, 70 S. W. (2d), 25; Humphries v. Bank, supra.

A number of other interesting questions are very ably urged by the surety but it is unnecessary to pass on any of them for the reason that we hold that the Probate Court had no power to grant the relief awarded. This was not within the jurisdiction of that court.

█ The Guardian contends that the Probate Judge erred in removing her and appointing her successor. Code, section 8509 provides that the county court shall inquire into mismanagement and neglect on the part of guardians and shall cause all delinquent guardians to be summoned before it at any time. The next section provides that it shall make such rules and orders for better ordering, managing and securing the estates of wards and for the removal of guardians and appointment of others as it shall think fit in certain specified cases, among these being where a guardian wastes or converts the money or estate of her ward to his own use and where he, in any other manner, mismanages the same. These code sections are applicable also to the Probate Court of Shelby County. See: Shannon's Code, section 387.

No question is made about the sufficiency of the present proceeding with respect to the exercise of this power by the court. The contention is that the Guardian acted in good faith, upon the advice of counsel, and that the facts did not warrant her removal.

██ The removal of a guardian is largely a matter in the discretion of the Probate Judge and his action in this respect is not to be disturbed except upon a clear case of abuse of that discretion. Whatever may have been the effect of chapter 100 of the Public Acts of

1931 conferring upon guardians authority to invest in existing real estate bonds and notes so far as the present case is concerned, a question which we do not decide, there can be no doubt that the original investment was illegal at the time it was made and hence amounted to waste within the meaning of the code section above referred to. This alone authorized the removal of the guardian.

■ Moreover, there was obviously a substantial conflict of interest between the Guardian and her ward, which was asserted and very properly brought to the attention of the court by the Guardian herself. Under all the facts the Probate Judge manifestly came to the conclusion that it was to the best interest of the ward that a new guardian be appointed, notwithstanding that Mrs. Christie acted in the utmost good faith and from the best of motives, and we are not prepared to say that his conclusion in this respect was erroneous. A guardian is in a sense the agent through whom the Probate Court manages the affairs of a minor. Its right to choose its own representative is, of course, important to the tribunal upon whom the responsibility rests primarily. An appellate court, far removed from the scene of activity which upon the other hand, is constantly under the scrutiny of the Probate Court, will be slow, indeed, to substitute its judgment in a matter of that nature for that of the other court.

It results that that portion of the decree removing the general Guardian and requiring her to make a final settlement and appointing a successor is affirmed. In other respects the decree is reversed and the petition of the special Guardian dismissed. The costs of the appeal will be adjudged against the general Guardian with the direction that they be paid from the funds in his hands.

Senter and Ketchum, JJ., concur.

## On Petition to Rehear.

ANDERSON, J. The Special Guardian has filed a very earnest petition to re-hear. The gist of this petition is to be found in the contention expressed as follows:

"That this case presents a simple matter of arithmetic, and that it can be worked out and does work itself out to a mathematical certainty; and that in all of its essentials presents no question of complexity of accounting. In other words, as we see the situation, this record presents no item over which any disagreement was had; it presents no question of contention—other than the questions of the legality of said investment and the jurisdiction of the Probate Court to pass upon that question under the circumstances and the state of the record in the Probate Court. Viewing it in this manner, are we not justified in asking: Does it not amount to the Probate Court passing upon the simple matters pertaining to the accounting

which were involved the same as though they had been submitted upon an agreed stipulation of facts?

"Up to the time of the trial all of the aforementioned credits, which were many, were presented to the Probate Court and are entered in detail in the record of said proceeding. They have thus become definite and certain and when a final settlement is made by the guardian, and which settlement must be passed upon and approved by the Judge of the Probate Court, there remains only the mere matter of simple calculation."

We considered before the question thus indicated, and in deference to the earnestness with which it is pressed we have done so again. We have reached the same conclusion, notwithstanding the ingenious argument made in support of the contention. In the opinion formerly filed we summarized the rather lengthy decree. We think the nature of this proceeding could not be better demonstrated than by what appears in this summary. Under the authorities cited in the opinion, we can but conclude that the granting of the relief of the nature evidenced by the decree was beyond the jurisdiction of the Probate Court of Shelby County.

As we pointed out before, in order to grant this relief it was necessary for the Probate Judge to reopen the annual settlements of the Guardian's account, as filed with the Clerk and approved by an order of the Court pursuant to statutory provisions regulating this matter. We do not think the Probate Court had jurisdiction to do this. While such settlements are ex parte, they are required by statute and must be approved by the Court. By Code, section 9738, it is provided that such settlements are to be taken as prima facie correct. With respect to their nature, it was said in Matlock v. Rice, 6 Heisk., 33, 39, that a "settlement properly made in the County Court is not an idle form or a dead letter," and moreover, that "if made in the mode prescribed by law, they should not be disturbed, except upon clear and satisfactory evidence." We are convinced that only the Chancery Court has jurisdiction to entertain proceedings to go behind such settlements.

It is asserted that "this proceeding is in no sense an attempt to surcharge and falsify a *final* settlement of a Guardian." By the emphasis placed upon the word, "final" it is evidently sought to make a distinction between an annual settlement and a final settlement, with respect to the method by which they may be attacked. We think there is no such distinction, so far as that question is concerned, and that by virtue of Code, section 9738, above referred to, any settlement made by a Guardian pursuant to the requirements of law is to be taken as prima facie correct.

In Matlock v. Rice, supra, the proceeding was to surcharge and falsify the annual settlement of a Guardian and to require him to account and make final settlement, and this was what the Court had reference to in the above quotations from the opinion in that case.

 It is again very earnestly urged that the amendatory Act of 1935, chapter 179, authorizes a proceeding of this nature in the Probate Court of Shelby County and relief of the nature of that granted. We are convinced that the view of this question expressed in the original opinion is correct. As there indicated, we think that the authority of the Probate Court under that Act is limited to the ascertainment of the balance due the ward, *as reflected by the records of the Court,* including the settlements made by the Guardian, and that it is for a balance so ascertained that it may, upon notice, summarily award an execution. Compare: Bowers v. Lester, 2 Heisk. 456. As we have already said, we are not of the opinion that this statute conferred upon the Probate Court the power to reopen records theretofore properly made, and determine, upon proof, the balance due by the Guardian.

The jurisdictional question being determinative, the other questions are immaterial.

The result is that the petition to re-hear is denied at the cost of the petitioner.

Senter and Ketchum, JJ., concur.